DIES ELECTRIC COMPANY, APPELLANT, *v.*
CITY OF AKRON, APPELLEE.

[Cite as Dies Electric Co. v. Akron (1980),
62 Ohio St. 2d 322.]

(No. 79-1202—Decided June 11, 1980.)

[image redacted]

*Weick & Gibson Co., L.P.A., Mr. Warren W. Gibson* and *Mr. Michael J. Moran,* for appellant.

*Mr. Robert D. Pritt,* director of law, and *Mr. Randall A. Cole,* for appellee.

HERBERT, J. This cause requires us to determine whether appellee, with respect to contracts let for improvements to municipal property, is bound by the retainage provisions prescribed by the General Assembly in R. C. 153.13,[1] or whether this charter city may, under Section 3 of Article XVIII of the Constitution of Ohio, enact by ordinance retainage procedures which differ from that statute. Appellant contends that the statute is a law of general application setting forth the retainage procedure which governs public improvement contracts let by municipalities and that, pursuant to Section 3 of Article XVIII of the Constitution of Ohio, a conflicting municipal ordinance must yield thereto.

---

[1] R. C. 153.13 provides, in applicable part:

"***From the date the contract is fifty percent complete, as evidenced by payments in the amount of at least fifty per cent of the contract to the person with whom the owner has contracted, all funds retained pursuant to sections 153.12 and 153.14 of the Revised Code for the faithful performance of work shall be deposited in the escrow account designated in section 153.63 of the Revised Code. After the contract is fifty percent complete, no further funds shall be retained. When the major portion of the project is substantially completed and occupied, or in use, or otherwise accepted, and there exists no other reason to withhold retainage, the retained percentages held in connection with such portion shall be released from escrow and paid to the contractor, withholding only that amount necessary to assure completion. Funds in the escrow account not heretofore paid, with accumulated interest, shall be paid to the person with whom the owner has contracted thirty days from the date of completion or either acceptance or occupancy by the owner. Such payments shall be in accordance with division (A)(2) of section 153.63 of the Revised Code.***"

Additionally, appellee maintains that the state does not possess constitutional authority under Section 6 of Article XIII,[2] and Section 13 of Article XVIII[3] of the Constitution of Ohio, to limit the Home Rule power of a charter municipality to approve by ordinance a payment procedure which differs from state law.

Section 7 of Article XVIII of the Constitution of Ohio provides, that "[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 3 of Article XVIII empowers municipalities "[t]o exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." In conformance with Section 7, appellee adopted a charter which provides in pertinent part: "The City shall have all powers * * * granted to municipalities by the Constitution or laws of Ohio; and all powers * * * shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein, * * * as * * * provided by ordinance or resolution of the Council * * * and when not prescribed by this Charter * * * or ordinance of Council, then said powers shall be exercised in the manner prescribed by State law." The charter provides further that the city of Akron "[m]ay appropriate the money of the City for all purposes lawful under the provisions of this Charter;" and "* * * construct, regulate and maintain all things of the nature of public works and improvements * * *."

In *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212, this court was called upon to discuss municipal authority

---

[2] Section 6 of Article XIII of the Constitution of Ohio provides:

"The general assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power."

[3] Section 13 of Article XVIII of the Constitution of Ohio provides, in applicable part:

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes * * *."

under the newly adopted Home Rule amendments to the Ohio Constitution. As stated at pages 390 and 391:

"Section 7 of the home-rule amendment confers power on the municipality to frame and adopt a charter for its government, and to *exercise thereunder* all powers of local self-government as provided by Section 3. That is, the people of the municipality are given power to construct the machinery of their own local government and to operate it themselves. [Emphasis *sic.*]

"A charter is not power. It is the symbol of power. It provides the means and the methods to exercise powers. But it is useless unless the powers intended to be exercised are at hand.

"* * *

"The constitution authorizes the city to exercise part of the sovereign power, and in the proper exercise of that part it is immune from general laws."

A charter municipality's authority under Section 3 of Article XVIII of the Constitution of Ohio is not, however, unlimited. Under Section 3 of Article XVIII, the words "as are not in conflict with general laws" place a limitation upon the power to adopt "local police, sanitary and other similar regulations," but do not restrict the power to enact laws for "local self-government." *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 151 N.E. 2d 722 (paragraph four of the syllabus); *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297, 164 N.E. 2d 574. Additionally, the powers granted under Section 3 of Article XVIII, are subject to other "restrictions or limitations contained in any other provision in the Constitution." *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81, 88, 100 N.E. 2d 225. Paragraph one of the syllabus in *Bazell* v. *Cincinnati* (1968), 13 Ohio St. 2d 63, 233 N.E. 2d 864, certiorari denied, 391 U.S. 601, states:

"By reason of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter city has all powers of local self-government except to the extent that those powers are taken from it or limited by other provisions of the Constitution or by statutory limitations on the powers of the municipality which the Constitution has authorized the General Assembly to impose."

We do not agree with appellant's contention that appellee's ordinance is an exercise of municipal police power (as opposed to one of local self-government). Cf. *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St. 338, 103 N.E. 512; *Cincinnati* v. *Gamble* (1941), 138 Ohio St. 220, 34 N.E. 2d 226; *Auxter* v. *Toledo* (1962), 173 Ohio St. 444, 183 N.E. 2d 920; *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519.

In *Fitzgerald* v. *Cleveland, supra,* this court indicated, at page 359, that the essence of the "general laws" which prevail over conflicting municipal police powers under Section 3 of Article XVIII, are those that involve "***the concern of the state for the peace, health and safety of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions—such as [those which] regulate the morals of the people, the purity of their food, the protection of the streams, the safety of buildings and similar matters." By contrast, it is reasoned in *State, ex rel. Toledo,* v. *Lynch* (1913), 88 Ohio St. 71, 102 N.E. 670, at page 97, that the powers of local self-government which are granted under Section 3 of Article XVIII are essentially those powers of government which, "[i]n view of their nature and their field of operation, are local and municipal in character." Similarly, it was stated in *Fitzgerald* v. *Cleveland, supra,* at page 344: "[I]t is sufficient to say here that the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular community." See *Billings* v. *Cleveland Railway Co.* (1915), 92 Ohio St. 478, 484, 111 N.E. 155.

It is our conclusion that the retainage of funds to guarantee work executed on a contract for the improvement of municipal property is a matter embraced within the field of local self-government.[4] Moreover, it is well established that

---

[4] Appellant contends also that appellee was bound by the escrow procedure set forth in R. C. 153.13 and 153.63, since the city did not enact by charter or ordinance a procedure different from that prescribed by state law. Appellant argues that, pursuant to appellee's charter, state law controls in this area. We agree that appellee has not enacted legislation which sets forth its own escrow procedure; however, by virtue of our decision that appellee has exercised its Home Rule power to formulate its own retainage procedure, the escrow provisions of R. C. 153.13 and 153.63 are

this charter city had the power to contract and that the terms of its ordinance should be considered a part of that contract. See *State, ex rel. West,* v. *Cincinnati Gas-Light & Coke Co.* (1868), 18 Ohio St. 262; *Circleville Light & Power Co.* v. *Buckeye Gas Co.* (1903), 69 Ohio St. 259, 69 N.E. 436; *Columbus* v. *Columbus Gas Co.* (1907), 76 Ohio St. 309, 81 N.E. 440; *East Ohio Gas Co.* v. *Akron* (1909), 81 Ohio St. 33, 90 N.E. 40; *Interurban Ry. & Terminal Co.* v. *Cincinnati* (1915), 93 Ohio St. 108, 112 N.E. 186; *Cincinnati* v. *Pub. Util. Comm.* (1918), 98 Ohio St. 320, 121 N.E. 688; *Interurban Ry. & Terminal Co.* v. *Pub. Util. Comm.* (1918), 98 Ohio St. 287, 120 N.E. 831; *Columbus* v. *Pub. Util. Comm.* (1921), 103 Ohio St. 79, 133 N.E. 800; *Youngstown* v. *First Natl. Bank of Youngstown* (1922), 106 Ohio St. 563, 574, 140 N.E. 176; *State, ex rel. Leach,* v. *Redick* (1959), 168 Ohio St. 543, 548, 157 N.E. 2d 106; *State, ex rel. Cronin,* v. *Wald* (1971), 26 Ohio St. 2d 22, 268 N.E. 2d 581. Therefore, a charter municipality, in the exercise of its powers of local self-government under Section 3 of Article XVIII of the Constitution of Ohio, may, pursuant to its charter, enact retainage provisions for a contract for improvements to municipal property which differ from the retainage provisions of R. C. 153.13.[5]

Addressing appellee's argument that the state does not possess authority under Section 6 of Article XIII and Section

not applicable to this cause. This conclusion follows because R. C. 153.13 limits the escrow provisions of that statute to "[f]unds retained pursuant to R. C. 153.12 and 153.14." The funds herein were retained pursuant to appellee's ordinance. Furthermore, the escrow provisions of R. C. 153.63 are also limited by the language of R. C. 153.13 quoted above and R. C. 153.63(A) specifies that its provisions are applicable only to money due from "the state or county under a contract entered into under this chapter."

[5] Appellant has raised the assertion that appellee failed to exercise its powers of local self-government to supersede the retainage provisions of R. C. 153.13 by not specifically setting forth a contrary approach in the ordinance which approved the contract. It is clear, however, that the retainage provisions of the contract were part of the plans and specifications for the improvement project, both of which were expressly approved by the ordinance. The general specifications manual, which sets forth appellee's retainage procedure, was available to prospective bidders and was expressly referred to in the provisions of the contract as being applicable to the project. See *Edwards House Co.* v. *Jackson* (1907), 91 Miss. 429, 45 So. 14; 63 Corpus Juris Secundum, Municipal Corporations 771, Section 1107.

13 of Article XVIII of the Constitution of Ohio to control the debt incurring powers of a municipality, we find that such constitutional limitations do not proscribe appellee's power of local self-government with regard to the matter at bar. In *State, ex rel. Toledo,* v. *Weiler* (1920), 101 Ohio St. 123, 129-130, 128 N.E. 88, it is stated with reference to the provisions of Section 13 of Article XVIII:

"***But this reservation does not authorize the legislature to annul or curtail the powers expressly granted by the constitution. It may limit the levies of taxes and the extent of bonded indebtedness for local purposes, but it may not, either by action or inaction, preclude the exercise of power expressly conferred by the constitution, or deny the use of its revenues from taxation or its general credit for any purpose authorized by constitutional provision or for any purpose within the powers of local self-government thereby conferred. It was not contemplated that any grant of power by the legislature was essential, nor that it should be permitted to deny or limit the purpose, but only prescribe the limitation of taxation and bonded indebtedness for *all* local purposes." (Emphasis *sic*.)

*State, ex rel. Cronin,* v. *Wald, supra,* holds that (under the provisions of Section 6 of Article XIII and Section 13 of Article XVIII) the General Assembly may limit a municipality's aggregate indebtedness, but may not prescribe the procedure which a charter municipality must follow in limiting its expenditures arising from contracts entered into under its Home Rule powers, so long as such expenditures do not exceed the aggregate amount of indebtedness authorized by state law.

For the reasons stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

W. BROWN, J., dissents.