[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 375 
This is an appeal and cross-appeal from two judgments of the Lake County Court of Common Pleas. Appellant and cross-appellee, the city of Mentor ("appellant" or "city"), appeals the decisions declaring its bid solicitation for a public works project to be improper and finding the action to be a taxpayer suit and subject to an award of attorney fees. Appellees and cross-appellants, the National Electrical Contractors Association, Inc. ("NECA"), the Ohio Mechanical Contracting Industry, Inc. ("OMCI"), Ralph Day, and Day Electric Company, Inc. (collectively, "appellees"), appeal from the decision of the court finding that appellant's charter conferred authority to deviate from the requirements of R.C. 153.50.
Appellee Ralph Day is a resident and taxpayer in the city of Mentor. He is the President and CEO of appellee Day Electric Company, Inc., an electrical contractor, which pays corporate taxes to the city. Appellee NECA is an association of electrical contractors. OMCI is an association of skilled trades contractors which provide plumbing, heating, ventilating and air conditioning services.
In 1993, appellant solicited bids for two projects: the fire station and the senior center. For each project, appellant advertised that consideration would be given only to "prime aggregate bids," which required general contractors to submit a single bid for the entire project. This excluded contractors in specific trades from being considered separately for the projects.
Believing that the bidding procedure for the two projects violated state law, appellee Day sent letters to the city and the city law director, prior to the bid *Page 376 
opening dates, requesting that the city accept separate bids from the individual trades. The letter addressed to the law director requested that a suit be filed pursuant to R.C. 733.56. Day's requests were denied.
On September 9, 1993, appellees filed a complaint for declaratory judgment and injunctive relief. The action was brought as a taxpayer's suit. The trial court denied temporary injunctive relief. However, appellant did not award a contract on either project. Early in 1994, appellant resolicited bids for the fire station project, once again requiring prime aggregate bids. On February 3, 1994, appellees filed an amended complaint. The trial court denied temporary and preliminary relief.
On February 8, 1994, appellant passed Ordinance No. 94-0-11, authorizing the advertising for and awarding of prime aggregate bids only. On this same date, appellant awarded the fire station project to a general contractor, who had submitted an aggregate bid, through the passage of Ordinance No. 94-0-12. Subsequently, bidding was reopened on the senior center project and a contract was awarded to an aggregate bidder.
Both parties filed motions for summary judgment. Following extensive briefing, judgment was filed on December 30, 1994. The court held that the city possessed the home rule authority under its charter to enact the ordinance restricting bids for public works to aggregate bids, thereby superseding the dictates of R.C. 153.50. However, the trial court held that because bidding for the fire station was opened prior to the enactment of Ordinance No. 94-0-11, the bidding for this project was subject to and in violation of R.C. 153.50. The bidding process for the senior center was declared to be proper. Appellees' request for injunction was denied as to both projects, presumably for the reason that there had occurred substantial construction on the fire station project at the time the judgment was rendered.
On March 8, 1995, the trial court entered judgment finding the requirements for a statutory taxpayer action had been met, and awarding attorney fees in the amount of $34,439.17.
Appellant has filed a notice of appeal from these judgments, assigning the following as error:
"1. The trial court erred in finding the city of Mentor violated R.C. 153.50.
"2. The trial court erred in sustaining the taxpayers action and awarding attorney fees in the amount of $34,439.197 [sic]."
Appellees have filed a cross-appeal from the judgments, and present two cross-assignments of error: *Page 377 
"1. The trial court erred in failing to grant summary judgment or default judgment to Appellees/Cross-Appellants as a matter of law, and given the City of Mentor's failure to file an amended answer or a response.
"2. The trial court violated Appellees/Cross-Appellants' Constitutional right to due process by granting summary judgment to the City of Mentor thus denying a trial on the factual dispute raised by Appellees/Cross-Appellants."
For appellant's first assignment of error, it is argued that the trial court erred in concluding that the bidding procedure for the fire station project was in violation of R.C. 153.50. Appellant asserts that the city charter authorized the aggregate bid requirement for public works projects and that the passage of an ordinance was not necessary.
R.C. 153.50 provides:
"[A] municipal corporation * * * authorized to contract for the erection, repair, alteration, or rebuilding of a public building * * * or improvement and required by law to advertise and receive proposals for furnishing of materials and doing the work necessary for the erection thereof, shall require separate and distinct proposals to be made for furnishing such materials or doing such work, or both, in their discretion, for each separate and distinct trade or kind of mechanical labor, employment, or business entering into the improvement."
The trial court held that the Home Rule Amendment to the Ohio Constitution, found in Section 3, Article XVIII, permitted the city to provide in its charter for the solicitation of aggregate bids in public works projects in contravention of the mandates of R.C. 153.50.
Section 7, Article XVIII of the Ohio Constitution provides:
"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."
Section 3, Article XVIII reads:
"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
It is well established that the words "as are not in conflict with general laws" modify the words "local police, sanitary and other similar regulations," but not the words "powers of local self-government." State ex rel. Canada v. Phillips (1958),168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, paragraph four of the syllabus. Thus, in matters of local self-government, a charter provision which conflicts with a parallel state law prevails over the state law and supersedes it. State ex rel.Bardo v. Lyndhurst (1988), 37 Ohio St.3d 106, 524 N.E.2d 447. *Page 378 
In Natl. Elec. Contrs. Assn., Inc. v. Painesville (Jan. 29, 1973), Lake App. No. 202, unreported, affirmed on other grounds (1973), 36 Ohio St.2d 60, 65 O.O.2d 212, 303 N.E.2d 870, this court affirmed the trial court's judgment declaring that a resolution adopting plans and specifications calling for aggregate bids exclusively in a public works project was an exercise of the city's home rule authority granted by its charter and that the city was accordingly not bound by the provisions of R.C. 153.50 and 153.51.
In Dies Elec. Co. v. Akron (1980), 62 Ohio St.2d 322, 326, 16 O.O.3d 365, 367, 405 N.E.2d 1026, 1028, the Supreme Court of Ohio discussed the terms "general laws" and "local self-government":
"In Fitzgerald v. Cleveland [(1913), 88 Ohio St. 338,103 N.E. 512], this court indicated, at page 359 [103 N.E. at page 518], that the essence of the `general laws' which prevail over conflicting municipal powers under Section 3 of Article XVIII, are those that involve `* * * the concern of the state for the peace, health and safety of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions — such as [those which] regulate the morals of the people, the purity of their food, the protection of the streams, the safety of buildings and similar matters.' By contrast, it is reasoned in State, ex rel. Toledo, v. Lynch
(1913), 88 Ohio St. 71, 102 N.E. 670, at page 97 [102 N.E. at page 673], that the powers of local self-government which are granted under Section 3 of Article XVIII are essentially those powers of government which, `[i]n view of their nature and their field of operation, are local and municipal in character.' Similarly, it was stated in Fitzgerald v. Cleveland, supra, at page 344 [103 N.E. at pages 513-514]: `[I]t is sufficient to say here that the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular community.' See Billings v. Cleveland Railway Co.
(1915), 92 Ohio St. 478, 111 N.E. 155."
In Dies Elec. Co., 62 Ohio St.2d 322, 16 O.O.3d 365,405 N.E.2d 1026, syllabus, the court held as follows:
"A charter municipality, in the exercise of its powers of local self-government under Section 3 of Article XVIII of the Constitution of Ohio, may, pursuant to its charter, enact retainage provisions for a contract for improvements to municipal property which differ from the retainage provisions prescribed in R.C. 153.13."
This court concludes, based upon Dies Elec. Co. and our prior decision in Natl. Elec. Contrs. Assn., that the decision to restrict bidding for public works projects to aggregate bids is a matter of local self-government. Accordingly, a charter provision authorizing the restricted bidding procedure prevails over *Page 379 
R.C. 153.50. Accord State v. Columbus (Nov. 5, 1981), Franklin App. No. 81AP-273, unreported, 1981 WL 3581.
In State ex rel. Bardo v. Lyndhurst (1988), 37 Ohio St.3d 106,110, 524 N.E.2d 447, 451, the Supreme Court of Ohio held that there must be express charter authorization to enact rules or ordinances that supersede conflicting state statutory provisions:
"* * * Although the Constitution gives municipalities the authority to adopt home rule, local self-government, the exercise of those powers by the adoption of a charter should clearly and expressly state the areas where the municipality intends to supersede and override general state statutes." See, also, State ex rel. Regetz v. Cleveland Civ. Serv. Comm. (1995),72 Ohio St.3d 167, 648 N.E.2d 495; State ex rel. Lightfield v.Indian Hill (1994), 69 Ohio St.3d 441, 633 N.E.2d 524.
An examination of appellant's charter reveals an intent to exercise home rule powers to the fullest extent, as well as a clear and express authorization for the city council to supersede state law in the areas of bid solicitations and public works contract awards.
Section 2.02, Article II of the charter provides:
"The municipality shall have all the powers, general or special, governmental or proprietary, that may now or hereafter lawfully be possessed or exercised by municipal corporations under the Constitution and general laws of the State of Ohio. The powers of this municipality shall be exercised in the manner prescribed in this Charter, or, to the extent that the manner is not prescribed herein, in such manner as the Council may determine. The powers of the municipality may also be exercised, except as a contrary intent or implication in this Charter or in the enactments of the Council, in such manner as may now or hereafter be provided by the general laws of the State of Ohio."
Section 3.06, Article III of the charter further provides:
"All the legislative power of the municipality and the determination of all matters of policy shall be vested in the Council. Without limitation of the foregoing, the Council may by ordinance make provisions differing from the general law with respect to:
"* * *
"(E) The making, advertising and awarding of contracts, except as provided in Section 7.03 of this Charter * * *."[1] *Page 380 
The trial court in the case sub judice held, however, that R.C. 153.50 was applicable to the city prior to the enactment of Ordinance No. 94-0-11. We agree.
It has been held that:
"`A charter is not power. It is the symbol of power. It provides the means and the methods to exercise powers.* * *'"Dies Elec. Co., 62 Ohio St.2d at 325, 16 O.O.3d at 366,405 N.E.2d at 1028, quoting Froelich v. Cleveland (1919), 99 Ohio St. 376,391, 124 N.E. 212, 216.
Section 3.06, Article III of the charter provides that, with respect to the "making, advertising and awarding of contracts," the council "may by ordinance make provisions differing from the general law." This court concludes that the plain language of this charter provision confers authority upon the council to make policy decisions whether to deviate from the general law and that, when it chooses to do so, to carry that decision into effect by the passage of an ordinance. Although appellant passed an ordinance authorizing the bidding procedure at issue, it was enacted long after the fire station project was advertised and the bidding was opened. In fact, the ordinance was passed immediately prior to the ordinance awarding the contract on this project. The trial court correctly held that, with respect to the first station project, appellant had not timely exercised its home rule authority to override the provisions of R.C.153.50.[2]
For the foregoing reasons, appellant's first assignment of error is without merit.
For its second assignment of error, appellant argues that the court erred in awarding attorney fees to appellee Day. This court agrees as appellees failed to deposit security for the costs of the action.
In Creed v. Sauline (Aug. 12, 1994), Trumbull App. No. 93-T-4977, unreported, 1994 WL 587389, at 6-7, it was stated: *Page 381 
"R.C. 733.59 provides that a taxpayer's lawsuit cannot be maintained unless the taxpayer `gives security for the costs of the proceeding.' In interpreting this statute, the Supreme Court of Ohio has held that the security requirement is jurisdictional in nature as to a statutory taxpayer action, and that an award of attorney fees cannot be given when there is a failure by the taxpayer. However, under such circumstances, the suit can still go forward, but only as a common-law taxpayer suit for which security is not required and attorney fees are unavailable.State ex rel. Citizens for a Better Portsmouth v. Sydnor (1991),61 Ohio St.3d 49 [572 N.E.2d 649].
"In this case, Sauline and the other defendants presented evidence indicating that although appellant had paid the initial fee for filing the action, she never filed any security covering the costs of the action with the clerk of courts. Thus, underSydnor, the trial court did not err in determining that she was not entitled to recover attorney fees. * * *"
This court questions the precise nature of the "security" requirement of R.C. 733.59 in light of Sydnor. It is clear, however, that the Sydnor court found the payment of the initial filing fee did not satisfy this requirement, and we are bound by that decision. Id., 61 Ohio St.3d at 54, 572 N.E.2d at 652-653
(Douglas, J., concurring in part and dissenting in part).
Accordingly, the trial court in the present action incorrectly determined that it possessed jurisdiction to award attorney fees on the ground that the payment of the initial fee for the filing of the action satisfied the security requirement of R.C. 733.59. The trial court was without jurisdiction to award attorney fees.
The second assignment of error has merit.
Under the "first issue presented for review and argument" contained in appellees' first cross-assignment of error, it is argued that the requirements of R.C. 153.50 cannot be avoided by the exercise of municipal home rule authority. The issue presented by this argument has been addressed under appellant's first assignment of error. Moreover, we conclude that R.C. 153.50
was not enacted pursuant to Section 34, Article II of the Ohio Constitution, which authorizes laws regulating the welfare of employees. Cf. Rocky River v. State Emp. Relations Bd. (1989),43 Ohio St.3d 1, 539 N.E.2d 103.
Under appellees' second proposition in their first cross-assignment of error, it is argued that the trial court erred in denying their motion for default judgment because of appellant's failure to file an answer to appellees' amended complaint, and that the trial court was required to enter summary judgment in their favor as a matter of law due to the absence of evidence contradicting the evidence contained in the "supplement" to appellees' motion for summary judgment. *Page 382 
Civ.R. 55(D) provides:
"No judgment by default shall be entered against this state, a political subdivision, or officer in his representative capacity or agency of either unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."
Appellees claim that the "supplement" to their motion for summary judgment provided sufficient evidence requiring either the entry of default judgment or summary judgment. Assumingarguendo that the "supplement" was properly before the trial court, we conclude that the evidence offered therein did not require the entry of default judgment or summary judgment in appellees' favor.
The evidence submitted in the "supplement" was introduced to demonstrate that, as a consequence of the aggregate bidding procedure by appellant, the general contractor who had been awarded the fire station contract engaged in "bid shopping" to increase its own profit and discriminated against individual trade contractors in awarding subcontracting work. This evidence reflected upon the wisdom of the city in restricting bidding to aggregate bids. It was not, however, relevant to the issue of whether the city was authorized by the Home Rule Amendment to the Ohio Constitution and its own charter to supersede the provisions of R.C. 153.50.
The question of whether a particular action by a municipality is an exercise of the powers of local self-government, and the construction of a municipal charter are matters of law for a court to decide. See State ex rel. Paluf v. Feneli (1994),69 Ohio St.3d 138, 142, 630 N.E.2d 708, 711. Although the evidence submitted by appellees may have raised serious questions as to the wisdom of the city's decision to restrict bids to aggregate bids, the only issue before the trial court was whether the city had the authority to make the decision, not the wisdom of the policy. The evidence was therefore not relevant to the case and certainly did not mandate the entry of default judgment or summary judgment in favor of appellees.
The first cross-assignment of error is without merit.
For their second cross-assignment of error, appellees contend that there exist genuine issues of material fact which require a trial. The factual issues which are alleged to exist relate to whether the city's actions were an exercise of local self-government or local police power, and whether R.C. 153.50
was enacted pursuant to Section 34, Article II of the Ohio Constitution. We have previously concluded that the evidence offered by appellees relates only to the prudence of the city's decision, and not to its authority to make the decision, which is a matter of law to be determined by a court. Moreover, we have concluded that the trial court's determinations of law are correct. *Page 383 
The second cross-assignment of error is without merit.
In accordance with the foregoing, the second assignment of error has merit and the March 8, 1995 judgment awarding attorney fees is reversed. Appellant's first assignment of error and appellees' cross-assignments of error are without merit and the December 30, 1994 judgment is affirmed.
Judgment accordingly.
CHRISTLEY, P.J., and JOSEPH E. MAHONEY, J., concur.
[1] Section 7.03, Article VII provides:
"The Manager may, within the amounts and items appropriated by Council, make purchases and enter into contracts on behalf of the City involving expenditures less than the amount for which bids are required pursuant to Section 735.05 of the Ohio Revised Code. Purchases and contracts involving an expenditure in an amount requiring bidding pursuant to Section 735.05 of the Ohio Revised Code shall only be made with the lowest and best bidder as determined by Council, after advertising for written bids for a period of not less than two nor more than four consecutive weeks in a newspaper of general circulation within the City; provided however, that Council may authorize a contract for professional or personal services without advertising for bids, and Council may authorize a purchase or contract involving an expenditure in any amount without advertising for bids if it determines and declares by an affirmative vote of five members that a real emergency exists and sets forth the nature of the emergency in its legislation."
[2] We note that appellees state in their brief that they "do not seek at this time to undo the projects which are now near completion; nevertheless, they appeal the Court's erroneous validation of the City's attempt to abrogate State law by ordinance for the subsequently rebid Senior Center project and for all future projects."