OPINION
{¶ 1} Plaintiff-appellant, Trucco Construction Company, Inc. ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, in which that court granted summary judgment against appellant and in favor of defendant-appellee, City of Columbus ("appellee") as to appellant's claims for damages arising out of the parties' contracts for two water system improvement projects.
 {¶ 2} On September 19, 2001, appellee opened sealed bids for storm water system improvements for Watkins Road ("the Watkins Road project") and for sanitary and storm water system improvements for Rhoads Avenue ("the Rhoads Avenue project"). Appellee delayed execution of the contract for the Rhoads Avenue project until December 21, 2001, and delayed execution of the contract for the Watkins Road project until April 2, 2002. Appellee issued Notices to Proceed as to both projects on June 24, 2002.
 {¶ 3} Appellee admitted that it had delayed the commencement of both projects and agreed to pay appellant for documented increases in wages and materials costs occasioned by the delay. According to Louis Piccin ("Piccin"), the Vice President of appellant, appellant did not accept the city's offer as "full" compensation for costs occasioned by appellee's delays, but stated it would proceed with work and would resolve disputed items of damages through arbitration or litigation. (Piccin Aff., ¶ 6.)
 {¶ 4} Following completion of a substantial portion of the work, appellant presented appellee with claims for unabsorbed home office overhead expenses incurred during the suspension of work on the projects from late 2001 through June 24, 2002, along with overtime expenses that appellant claimed it incurred in order to maintain the revised schedules occasioned by appellee's delay. Appellant also sought to recover general conditions cost increases and loss of labor efficiency due to the fact that the delay made it impossible for appellant to share labor between the Rhoads Avenue project and another project known as the Driving Park Sanitary Sewer Capital Improvements project ("the Driving Park project"), which was located one-half mile from Rhoads Avenue.
 {¶ 5} Appellee refused to pay any amounts other than certain wage and materials price escalation costs, arguing that with these payments it has fully compensated appellant for the delay that it caused. As a result, on June 3, 2004, appellant instituted this action by filing a complaint containing seven counts.
 {¶ 6} Counts I and II seek damages associated with the delay incurred for the Watkins Road project and the Rhoads Avenue project, respectively. Appellant seeks unabsorbed home office overhead based upon appellee's alleged violation of R.C. 153.12 in failing to award both contracts within 60 days following the opening of bids. Appellant also seeks compensation for "premium time" that it allegedly expended in order to maintain the projects' post-delay schedules. Counts I and II are based on violation of R.C. 153.12 and breach of the parties' contract in failing to pay amounts due for delay as specified in that contract.[1] Count III alleges that appellant encountered soil and groundwater conditions at the Rhoads Avenue project that differed materially from the conditions that appellant alleges appellee represented in the contract documents.
 {¶ 7} Count IV contains a claim for increased general conditions costs and loss of labor efficiency that appellant incurred on the Driving Park project, which appellant calls the "companion project" to the Rhoads Avenue project. Count V is premised upon appellee's delay in awarding the contracts and proceeding with the projects, and claims a breach of implied warranty to provide a site upon which to perform work without hindrance, interference or delay. As in Counts I and II, appellant seeks damages in Count V for unabsorbed home office overhead plus premium time. Counts VI and VII are not before this court on appeal.
 {¶ 8} On August 19, 2005, the court of common pleas granted appellee's motion for summary judgment as to Counts I through VI, following which appellant dismissed Count VII without prejudice and appealed the trial court's judgment as to Counts I through V. On appeal, appellant advances four assignments of error as follows:
 1. The Court of Common Pleas erred in granting summary judgment to Appellee-The City of Columbus (the "City") on Counts I and II of Appellant-Trucco Construction Co., Inc. ("Trucco") Complaint, which are based on the City's admitted failure to timely award Trucco the contracts and notices to proceed on two competitively-bid public construction projects (the Watkins Road/New World Drive Storm Water System Improvements, C.I.P. No. 884 (the "Watkins Rd. Project") and the Rhoads Avenue Sanitary and Storm System Improvements Capital Improvement, Project No. 626 (the "Rhoads Ave. Project").)
 2. The Court of Common Pleas erred in granting summary judgment to the City on Count III of Trucco's Complaint, which is based on Trucco encountering soil and groundwater conditions in and around the Rhoads Ave. Project that differed materially from the conditions expressly and impliedly represented by the City.
 3. The Court of Common Pleas erred in granting summary judgment to the City on Count IV of Trucco's Complaint, which seeks damages for increased general conditions costs and a timely loss of labor efficiency due to the City's admitted failure to award the contract and notice to proceed for the Rhoads Ave. Project.
 4. The Court of Common Pleas erred in granting summary judgment to the City on Count V of Trucco's Complaint, which is based on the City's admitted failure to timely award the contracts and issue notices to proceed on the Rhoads Ave. and Watkins Rd. Projects, even though the City impliedly warranted that it would provide Trucco with project sites upon which to work without hindrance, interference, or delay.
 {¶ 9} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ. R. 56(C); State ex rel. Grady v. State Emp. Rels.Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. We review questions of law de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing Ohio Bell Tel.Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.
 {¶ 10} We begin with appellant's first assignment of error. In granting summary judgment to appellee as to Counts I and II, the trial court concluded that appellant is not entitled to unabsorbed home office overhead expenses, which it had sought to recover pursuant to R.C. 153.12, which mandates that cities pay "a reasonable sum for overhead" when they fail to execute public improvement contracts within 60 days from the opening of bids. The court found that appellee is exempt from the requirements of R.C. 153.12 because it has enacted its own legislation relating to the time within which it may execute public improvement contracts, and the local ordinance prevails over the state law.
 {¶ 11} The court found that R.C. 153.12 is inapplicable because, owing to its status as a "charter" or "home rule" city, appellee's ordinances prevail over state statutes concerning the same subject matter. Specifically, the court concluded that because appellee's city council enacted legislation approving the letting of both contracts to appellant, and those ordinances contained reference to the contract documents, then any provision within the contract documents pertaining to the timing of appellee's obligation to let the contracts controls over the 60-day provision of R.C. 153.12. The contract documents in the present case incorporate by reference the Construction and Materials Specifications ("CMS"), which document requires appellee to award contracts "as soon as is reasonably possible after the opening of bid proposals."
 {¶ 12} In support of its first assignment of error, appellant argues that the trial court erred in concluding that appellee is immune from regulation under R.C. 153.12.
 {¶ 13} "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 7, Art. XVIII, Ohio Constitution. The "Home Rule Amendment" provides, "[municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Art. XVIII, Ohio Constitution.
 {¶ 14} The phrase "as are not in conflict with general laws" restricts only the municipality's power to adopt "local police, sanitary and other similar regulations," not its powers of local self-government. DiesElectric Co. v. Akron (1980), 62 Ohio St.2d 322, 325, 16 O.O.3d 365,405 N.E.2d 1026. Charter municipalities have "the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." State Personnel Bd. of Rev. v. Bay Village Civil Serv.Comm. (1986), 28 Ohio St.3d 214, 218, 28 OBR 298, 503 N.E.2d 518, citingState ex rel. Hackley v. Edmonds (1948), 150 Ohio St. 203, 212,37 O.O. 474, 80 N.E.2d 769.
 {¶ 15} Exercises of authority by a charter municipality that involve powers of local self-government thus prevail over general state laws.Novak v. Perk (1980), 64 Ohio St.2d 43, 18 O.O.3d 251, 413 N.E.2d 784. It is therefore clear that the Home Rule Amendment to the Ohio Constitution "confers a significantly high degree of sovereignty upon municipalities." Weir v. Rimmelin (1984), 15 Ohio St.3d 55, 56,15 OBR 151, 472 N.E.2d 341. "[T]he powers of local self-government which are granted under Section 3 of Article XVIII are essentially those powers of government which, `[i]n view of their nature and their field of operation, are local and municipal in character.'" Dies Electric, supra, at 326, quoting State ex rel. Toledo v. Lynch (1913), 88 Ohio St. 71,97, 102 N.E. 670.
 {¶ 16} "The rule of charter supremacy applies only where the conflict appears by the express terms of the charter and not by mere inference. In the absence of express language in a charter showing that it conflicts with the statutes, it is the duty of the courts to harmonize the provisions of the charter with the provisions of the statute relating to the same matter." State ex rel. Regetz v. Cleveland CivilService Comm. (1995), 72 Ohio St.3d 167, 170-171, 648 N.E.2d 495. (Citations omitted.) Thus, "[e]xpress charter authorization is necessary to enable municipalities to adopt administrative rules that prevail over statutory provisions in case of conflict." Id. at 170, citing State exrel. Lightfield v. Indian Hill (1994), 69 Ohio St.3d 441,633 N.E.2d 524, syllabus.
 {¶ 17} In the present case, appellant argues that appellee's charter does not expressly authorize appellee to adopt administrative rules that will prevail over the conntract-timing provision of R.C. 153.12 and that, absent this clear authorization, appellee is not immune from the application of the state statute.
 {¶ 18} In conformance with Section 7, Article XVIII, appellee adopted a charter that provides, in pertinent part:
 [T]he city of Columbus * * * shall have all powers that now are, or hereafter may be granted to municipalities by the constitution or laws of Ohio; and all such powers whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council.
 The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof the city shall have, and may exercise all other powers which, under the constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.
City of Columbus Charter, Sections 1-2. (Emphasis added.)
 {¶ 19} Appellee's charter further provides:
 All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict with the constitution of the state or with express provisions of this charter.
Id. at Section 232.
 {¶ 20} The charter also provides, "[t]he council shall have power by ordinance to provide for the construction, reconstruction, repair and maintenance by contract or directly by the employment of labor, of all local improvements[.]" Id. at Section 164.
 {¶ 21} By two separate ordinances, appellee authorized the issuance of a contract for the Rhoads Avenue project, and another contract for the Watkins Road project. Both ordinances also approved the plans and specifications for the project, which were part of the contract documents and which, in turn, incorporated by reference the CMS. The CMS requires appellee to award contracts "as soon as is reasonably possible after the opening of bid proposals" and provides for no payment to contractors the cost of unabsorbed home office overhead.
 {¶ 22} The same regulatory and contractual scenario presented itself to the Supreme Court of Ohio in Dies Electric. At issue in that case was the provision of the city of Akron's "General Construction and Material Specifications for * * * Miscellaneous Public Improvements" that authorized the withholding of retainage in the amount of three percent of the contract price to guarantee the improvements, while R.C. Chapter 153 authorized no such withholding of retainage. The general construction specifications document had been incorporated by reference into the contract, which, in turn, had been approved by ordinance. The contractor argued that the city had failed to expressly exercise its powers of local self-government with respect to retainage because it had not specifically set forth in the ordinance an approach to retainage contrary to that of the statute.
 {¶ 23} The Supreme Court of Ohio rejected that argument, holding that the city had exercised with adequate specificity its powers of local self-government regarding retainage by virtue of the fact that the ordinance expressly approved both the contract and the plans and specifications for the project, which included the retainage provisions.
 {¶ 24} In accordance with Dies Electric, we conclude that the issue of lapse of time between the opening of bids and the letting of contracts is a matter embraced within the field of local self-government and does not have extraterritorial effect. We further hold that appellee has exercised its Home Rule power to formulate its own procedure for letting of contracts and R.C. 153.12 is inapplicable herein. Thus, the trial court correctly concluded that appellee is entitled to judgment as a matter of law as to appellant's claims for unabsorbed home office overhead in Counts I and II.
 {¶ 25} Appellant argues that even if R.C. 153.12 is inapplicable, it is still entitled to recover overtime expenses allegedly incurred so that it could maintain the revised construction schedules for both projects. Appellant argues that an issue of fact precluding summary judgment remains as to Counts I and II because appellee maintains that it has fully compensated appellant for all increases in the cost of performance.
 {¶ 26} Appellee does not address this argument in its brief, except to again assert that it has fully met its obligation to pay appellant for the increased costs occasioned by the city's delay. As appellee points out, the CMS provides that the contractor is entitled to "any increase in the cost of performance of the Contract (excluding profit)." The parties continue to dispute whether appellee has paid the full "increase in the cost of performance."
 {¶ 27} It appears that the trial court recognized that issues of fact remain on this point when it stated:
 * * * the City has already paid all or some portion of the costs occasioned by the City's delay. Furthermore, the City has not moved for summary judgment on the final claim of Plaintiff as to the unpaid damages. * * * summary judgment is still appropriate as to the type of damage to be allowed. The contracts included CMS Section 108.94, which * * * states that `an adjustment shall be made * * * for any increase in the cost of performance of the Contract (excluding profit) necessarily caused by the unreasonable period of such suspension, delay * * *.' The Court concludes that the City had the right and properly exercised such right to limit damages and is not bound by the provisions under R.C. 153.12."
(Aug. 23, 2005 Decision and Entry.)
 {¶ 28} Review of the complaint reveals that Counts I and II, which seek two types of damages — unabsorbed home office overhead and increased wage costs — are not based solely on R.C. 153.12, but are also based upon common law breach of contract. As the trial court noted, its decision addressed only the "type of damage to be allowed" and in it the court determined that R.C. 153.12 is inapplicable and home office overhead is not recoverable. However, the court did not resolve the parties' factual dispute as to whether appellant may recover "increased wage rates" (Complaint, ¶ 32) beyond any sums that appellee may have already paid to appellant for such damages, under the terms of the parties' contract, including any applicable provisions of the CMS.
 {¶ 29} In support of its motion for summary judgment, appellee submitted the affidavits of Tatyana Arsh ("Arsh") and Tom Russell ("Russell") to support its contention that it had paid all documented increased costs for wages associated with its delay. In her affidavit, Arsh avers that appellee has paid appellant a total of $68,939.76 for wage and material cost increases associated with the Rhoads Avenue project. In his affidavit, Russell states that appellee has paid appellant for all wage and material cost increases associated with the Watkins Road project.
 {¶ 30} In support of its argument that summary judgment in favor of appellee was inappropriate, appellant offered the Piccin affidavit, in which Piccin states that appellant claims damages for additional overtime expenses in the amount of $23,730.00, (Piccin Aff. ¶ 6), but that appellee has refused to pay any delay damages other than those associated with increased prevailing wages and materials escalation costs. (Id., ¶ 14.)
 {¶ 31} On this record, we conclude that a genuine issue of material fact exists as to whether, pursuant to the parties' contract, appellant is entitled to recover additional amounts for delay (the trial court having correctly determined that home office overhead expenses are not available to appellant under R.C. 153.12). Accordingly, it was inappropriate to enter summary judgment as to Counts I and II insofar as those counts seek unpaid damages for delay pursuant to the parties' contract.
 {¶ 32} For all of the foregoing reasons, appellant's first assignment of error is sustained with respect to overtime expenses sought pursuant to the parties' contract, and overruled with respect to unabsorbed home office overhead pursuant to R.C. 153.12.
 {¶ 33} In support of its second assignment of error, appellant argues that the trial court erred in granting appellee summary judgment on Count III, which contains a claim for differing site conditions. In its complaint, appellant alleged that it had encountered more groundwater than had been "expressly or impliedly represented to exist by the contract documents[.]" (Complaint, ¶ 48.) It alleged that this required significant dewatering efforts, which adversely affected the progress and cost of the Rhoads Avenue project.
 {¶ 34} Specifically, appellant argues that when appellee's cost estimate, prepared by its design engineer and contained within the Contract Proposal and Specifications for the Project, included a budget line item for dewatering equal to one percent of the total projected cost of $1.9 million, this constituted an express or implied representation that appellant would not encounter significant amounts of ground water at the Rhoads Avenue project. Appellant relies upon CMS 104.02, which provides:
 Should the Contractor encounter or the Engineer discover during the progress of the work subsurface or latent physical conditions at the site differing materially from those indicated in the contract, or unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the contract the Engineer shall be promptly notified before they are disturbed. The Engineer will thereupon promptly cause the investigation of conditions if they are found to so materially differ and cause an increase or decrease in the cost of, or the time required for performance of the contract, an equitable adjustment will be made.
 {¶ 35} Appellant also argues that this affirmative representation about the amount of groundwater at the site triggers the Spearin doctrine, pursuant to which the government impliedly warrants the accuracy of the affirmative representations contained within plans and specifications that it furnishes to the contractor. "The Spearin doctrine holds that, in cases involving government contracts, the government impliedly warrants the accuracy of its affirmative indications regarding job site conditions. Further, where the information provided by the government was obviously intended to be used by bidding contractors in formulating their bids, he implied warranty of job site conditions will prevail over express contract clauses which disclaim any responsibility for the accuracy of information provided to the contractors, and which require contractors to examine the site and check the plans." The Sherman R.Smoot Co. of Ohio v. State of Ohio (2000), 136 Ohio App.3d 166, 176,736 N.E.2d 69. (Citations omitted.)
 {¶ 36} Thus, to prevail on its differing site conditions claim appellant must show:
 (1) that its contract contains an affirmative indication regarding the subsurface or latent physical condition that forms the basis of the claim; (2) that the contractor interpreted the contract as would a reasonably prudent contractor; (3) that the contractor reasonably relied upon the contract indications regarding the subsurface or latent physical condition; (4) that the contractor encountered conditions at the job site which differed materially from the contract indications regarding the subsurface or latent physical condition; (5) that the actual conditions encountered by the contractor were reasonably unforeseeable; and (6) that the contractor incurred increased costs which are solely attributable to the materially different subsurface or latent physical condition.
Smoot, supra, at 174.
 {¶ 37} In granting summary judgment on Count III, the trial court made three pertinent findings: (1) the cost estimate was not an affirmative representation as to the subsurface conditions that appellant would encounter at the site; (2) even if the cost estimate did make an affirmative representation regarding subsurface conditions, the cost estimate was not part of the contract; and (3) appellant executed a release, prior to the execution of the contract, by which it released appellee from all liability related to the accuracy and completeness of contract documents making representations about subsurface site conditions, and this release prevails over the differing site conditions clause in CMS 104.02.
 {¶ 38} "Issues of contract construction and interpretation are questions of law. Questions of law are subject to de novo review on appeal. The trial court's findings of fact, however, are entitled to deference on appeal and will not be overturned so long as there is competent, credible evidence to support them. " Id. at 172.
 {¶ 39} We will discuss only the first of the trial court's three findings enumerated above because the same is dispositive of appellant's second assignment of error. In order to recover under either the differing site conditions clause or the Spearin doctrine, appellant must show that the contract contained an affirmative representation regarding the subsurface physical condition that forms basis of the claim. The only representation upon which appellant bases its claim is the engineer's estimate that dewatering would comprise one percent of the total cost of the job. The trial court found that this does not constitute an affirmative representation about subsurface site conditions. We agree. A dewatering cost estimate, without more, simply does not constitute an affirmative representation about the conditions that will be encountered on the site. Thus, appellant cannot satisfy the first element of its differing site conditions claim underSmoot. Accordingly, the trial court correctly granted summary judgment on Count III in favor of appellee. For this reason, appellant's second assignment of error is overruled.
 {¶ 40} In support of its third assignment of error, appellant argues that the trial court erred in entering summary judgment on Count IV, in which appellant sought damages for loss of efficiency and increased general conditions costs for the Rhoads Avenue project because the delay prevented it from simultaneously working on the Rhoads Avenue project and the Driving Park project, which, appellant alleged, was bid as a "companion project" to the Rhoads Avenue project. The trial court found that the Driving Park project was independent of the Rhoads Avenue project and granted summary judgment to appellee because "there is no evidence offered by [appellant] to establish that the claimed damages were within any reasonable contemplation by [appellee]." (Decision and Entry, 9.)
 {¶ 41} Appellant argues that the parties' contract provides for an "adjustment * * * for any increase in the cost of performance of the Contract (excluding profit) necessarily caused by the unreasonable period of * * * [the] delay" (CMS 108.04) but does not expressly exclude consequential damages such as those sought in Count IV. It argues that the trial court erred by impermissibly reading the contract to provide for "any foreseeable increase" instead of "any increase." As appellant correctly states, the issue is whether appellant's increased general conditions costs and loss of labor efficiency were part of the "any increase in the cost of performance" recoverable under the contract. Appellee argues that any losses occasioned by appellant's inability to perform the Rhoads Avenue and Driving Park projects simultaneously are unrecoverable because they were unforeseeable.
 {¶ 42} "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (2d) Contracts, Section 347, comment a. However, "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." Restatement (2d) Contracts, Section 351.
 {¶ 43} "A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract. He is not, however, liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach. The mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable. It is enough, however, that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach." Restatement (2d) Contracts, Section 351, comment a.
 {¶ 44} According to Arsh, appellee advertised for bids for the Driving Park project in the summer of 2001, and opened the bids for that project on August 15, 2001, nearly one month before the opening of bids for the Rhoads Avenue project. Appellee was the lowest responsive bidder. She also states that the Driving Park contract expressly allowed appellee to reject all bids and not award the contract to any bidder, and contained no language expressly or impliedly promising that the two projects would be performed simultaneously. As such, appellee argues, at the time that bids were opened for the Rhoads Avenue project, neither party knew whether appellant would ultimately be awarded the Driving Park project, making the damages sought in Count IV unforeseeable and unrecoverable. We agree.
 {¶ 45} Piccin's affidavit constitutes evidence that appellant intended to perform the Rhoads Avenue and Driving Park projects simultaneously. (Piccin Aff., 12.) But appellant did not present, and our review of the record has not revealed, any evidence that it was foreseeable toappellee that appellant would be relying on simultaneous performance in formulating its bid for the Rhoads Avenue project. The appropriate test is whether the consequential damages were foreseeable by the one from whom they are sought. Having demonstrated the absence of a genuine issue of fact with respect to the question whether the consequential damages sought were foreseeable to it, appellee was entitled to judgment as a matter of law as to Count IV. Accordingly, appellant's third assignment of error is overruled.
 {¶ 46} In support of its fourth and final assignment of error, appellant argues that the trial court erred in granting summary judgment to appellee as to Count V, appellant's claim for breach of implied warranty to provide a site for work without hindrance, interference and delay.
 {¶ 47} Appellee points out that the express language of the parties' contracts permits appellee to delay the projects (and provides for compensation therefor), and argues that appellant has provided no authority for the proposition that implied warranties prevail over contradictory express contract language. Specifically, CMS 108.04 provides:
 [t]he Director may instruct the Contractor to delay the start of operations or suspend the Contractor's operations in whole or in part, for the length of time the Director may deem necessary. The Contractor shall start or resume the operations when notified to do so by the Director.
 If, without fault or negligence of the Contractor, the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted by an act of the Director in the administration of the Contract or by failure to act within the time specified in the Contract (or if no time is specified within a reasonable time), an adjustment shall be made by the Director for any increase in the cost of performance of the Contract (excluding profit) necessarily caused by the unreasonable period of such suspension, delay, or interruption, and the Contract shall be modified in writing.
 {¶ 48} " `In the absence of contractual provisions to thecontrary, a building or construction contractor has a right to recover damages resulting from a delay caused by the default of the contractee. * * *.'" John P. Novatny Electric Co. v. State (1975),46 Ohio App.2d 255, 259-260, 74 O.O.2d 412, 349 N.E.2d 328, quoting13 American Jurisprudence 2d 53, Building and Construction Contracts, Section 50. (Emphasis added.) However, it has been held that "parties can expressly stipulate against an implied warranty, in which event the rights of the parties are confined to those expressed in the contract." Strickler v.Pfister Associated Growers, Inc. (C.A.6, 1963), 319 F.2d 788, 789. This is because "it [is] not possible for the same event to create a right in the defendant to abandon the contract and at the same time create a right in the plaintiff to recover on a warranty by the defendant." Id. at 790.
 {¶ 49} Applying this rationale to the present case, we hold that CMS 108.04, an express term upon which the parties agreed when they entered into the contracts for the Rhoads Avenue and Watkins Road projects, prevails over any implied warranty to provide a site for work without hindrance, interference and delay. Accordingly, the trial court properly entered summary judgment in appellee's favor with respect to appellant's implied warranty claim. For this reason, we overrule appellant's fourth assignment of error.
 {¶ 50} In summary, appellant's first and second assignments of error are sustained in part and overruled in part, and appellant's third and fourth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is hereby remanded to that court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, cause remanded.
BRYANT and FRENCH, JJ., concur.
[1] As appellant noted in its memorandum in opposition to appellee's motion for summary judgment, "[appellee's] failure to pay all that is due is the breach here, not the fact that the contracts were delayed."