Stewart, J.
 

 The question which we are called upon to decide is whether the recall provisions of the charter of the city of Hamilton violate Section 38 of Article II of the Constitution of Ohio, which reads:
 

 “Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the General Assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the Constitution.”
 

 The charter of the city of Hamilton was adopted by its electors pursuant to Section 7, Article XVIII of the Constitution of Ohio, which reads:
 

 “Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.”
 

 Section 3 to which reference is made in Section 7 reads:
 

 “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 
 *210
 
 The three above sections of the Constitution were submitted by the Constitutional Convention of 1912 and were adopted by the electors of the state on September 3 of that year.
 

 It is claimed by respondent that, since Section 38, Article II, provides for removal from office, upon complaint and hearing, a recall from office under a charter provision allowing such a procedure by a vote of the people violates the provisions of Section 38.
 

 This court had before it Section 38, Article II, in the case of
 
 State, ex rel. Hoel, Pros. Atty.,
 
 v.
 
 Brown,
 
 105 Ohio St., 479, 138 N. E., 230. In that case the treasurer of Darke county was found, by report of the state bureau of inspection of public offices, to have committed an embezzlement of funds belonging to Darke county, and, thereupon, pursuant to Section 2713, General Code, as it then existed, the board of county commissioners attempted to remove the treasurer and fill the vacancy thereby resulting. It was claimed that Section 2713, General Code, had been authorized by Section 6, Article X of the Ohio Constitution of 1851, which read:
 

 “Justices of the peace, and county and township officers, may be removed, in such manner and for such cause, as shall be prescribed by law.”
 

 This court held, however, that Section 2713, General Code, which had been passed by the General Assembly prior to 1912, was in conflict with Section 38, Article II,
 
 supra,
 
 adopted in 1912; that as a result such statute was automatically repealed by Section 38, Article II; and that the county commissioners had no right to remove the county treasurer of Darke county except upon complaint and hearing.
 

 It is claimed in the present case that the decision in the
 
 Brown case
 
 makes it incumbent upon us to hold-that any attempt to recall a duly elected member of council of the city of Hamilton, pursuant to the pro
 
 *211
 
 visions of the city’s charter, would be illegal and unconstitutional for the reason that the recall would result in the removal of an officer without the filing of a complaint and a hearing at which he might present his defense to any charges against him and might have the opportunity to cross-examine any witnesses who might appear upon such hearing.
 

 All the members of this court adhere to the decision in the
 
 Brown case,
 
 supra, but hold that that decision is not applicable to a recall provision in a city charter adopted pursuant to Section 7, Article XVIII of the Ohio Constitution.
 

 The home-rule amendments to the Constitution were the subject of extensive debate in the Constitutional Convention of 1912. It is stated in 2 Proceedings and Debates of the Ohio Constitutional Convention of 1912, 1433, that the proposal with reference to home rule undertook to accomplish three things not possible under the Constitution of 1851:
 

 “First, to make it possible for different cities in the state of Ohio to have, if they so desire, different forms and types of municipal organizations.
 

 “The second thing, and the main thing, which the proposal undertakes to do is to get away from what is now the fixed rule of law, seemingly also required by the Constitution, that municipal corporations, like all other corporations, shall be held strictly within the limit of the powers granted by the Legislature to the corporation * * **. Therefore, this proposal undertakes pretty nearly to reverse that rule and to provide that municipalities shall have the power to do those things which are not prohibited, that is, those things with reference to local government, with reference to the affairs which concern the municipality, which are not forbidden by the lawmaking power of
 
 *212
 
 the state, or are not in conflict with the general laws of the state under the police power and the general state regulation. So the presumption would now become a presumption in favor of the lawfulness of the municipalities’ act, and that presumption would only be overcome by showing that the power had been denied to the municipalities or that it was against the general laws of the state.”
 

 The third thing discussed was the power of municipalities with reference to public utilities.
 

 It would seem from reading the debates that the Constitutional Convention desired to submit to the electorate of this state amendments to the Constitution to give to municipalities, and particularly to those which adopt charters, the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest.
 

 The home-rule sections of the Constitution were construed by this court in the case of
 
 Fitzgerald et al., Board of Deputy State Supervisors,
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338. The 'city of Cleveland had adopted a charter which provided that the offices of city solicitor, city auditor and city treasurer, which are by state statute elective, were made appointive, and that .the mayor and councilmen should be nominated by petition and not in a primary election.
 

 The questions involved in that case were whether the city had the power, under the home-rule amendments, to adopt a charter and provide therein for a form of municipal government differing from that provided by the general laws of the state, and to determine what officers shall administer the municipal government, and whether the nomination of elective officers could differ from the method prescribed by the general laws.
 

 Although the members of this court were equally
 
 *213
 
 divided upon the question, it is stated in the syllabus-of the
 
 Fitzgerald case, supra,
 
 as follows:
 

 “1. The provisions of Section 7, Article XVIII of the Constitution as amended in September, 1912, authorize any city or village to frame and adopt or amend a charter for its government and it may prescribe therein the form of the government and define the powers and duties of the different departments,, provided they do not exceed the pow7ers granted in Section 3, Article XVIII, nor disregard the limitations imposed in that article or other provisions of the Constitution.
 

 “2. Under Sections 3 and 7, Article XVIII, as so amended, municipalities are authorized to determine what officers shall administer their government, which shall be appointed and which elected, that the nomination of elective officers shall be made by petition by a method prescribed, and elections shall be conducted by the election authorities prescribed by general laws.”
 

 Judge Johnson, in his opinion, stated on page 344:
 

 “It will not be disputed that one of the powers of government is that of. determining what officers shall' administer the government, which ones shall be appointed and which elected, and
 
 the method of ■their appointment and election.
 
 These are essentials which are confronted at the very inception of any undertaking, to prepare the structure or constitution for any government. Obviously such power would be included' among ‘all powers of local self-government,’ which any municipality has authority to exercise under Section 3 of Article XVIII as to any officers of such municipality, unless the election of such officers is not a matter of municipal concern, or unless such power has been excepted in some manner from those granted.” (Italics ours.)
 

 A case strongly supporting the position of relator is that of
 
 State, ex rel. Taylor,
 
 v.
 
 French,
 
 96 Ohio St.,
 
 *214
 
 172, 117 N. E., 173. That case involved the validity of a provision in the charter of East Cleveland, allowing women to vote for municipal elective officers and to be eligible to be appointed to, elected to and hold any municipal office. It was claimed that the charter provision violated Article V, Section 1 of the Ohio Constitution, which limited electors to male citizens of the age of 21 years and over.
 

 The syllabus of the
 
 Taylor case
 
 reads:
 

 “1. The provisions of Section 1, Article V of the Constitution, which prescribe the qualifications of electors, control in all elections held to fill offices which the Constitution itself has provided for, and in all elections upon questions submitted to a vote pursuant to provisions of the Constitution; and such qualifications can be altered only by amendment to the Constitution.
 

 “2.
 
 The Constitution itself having by Article XVIII committed to any municipality the power to frame and adopt a charter for its government and to exercise thereunder all powers of local self-government, subject to the limitations expressed in that article, a provision in the charter of a municipality, adopted in full compliance with the article referred to, which confers upon women the right to vote for all municipal elective officers and to be appointed or elected to and hold any municipal office provided for in such charter, is valid.
 
 (Mills
 
 v.
 
 City Board of Elections et al.,
 
 54 Ohio St., 631, and
 
 State, ex rel.,
 
 v.
 
 City of Cincinnati et al.,
 
 19 Ohio, 178, approved and followed.) ”
 

 In his opinion in the
 
 Taylor case,
 
 Judge Johnson said, as reported on pages 182 and 183:
 

 “It is equally clear in the case we have here that the offices for which the relatrix seeks to vote were not created by the Constitution, and it is also equally clear that the subject matter, to wit, municipal government, is one as to which the Constitution confers pow
 
 *215
 
 er upon the municipality to adopt its own provisions. The charter of a city, which has been adopted in conformity with the provisions of Article XVIII, finds its validity in the Constitution itself, and not in the enactments of the General Assembly. The source of authority and the measure of its extent is the Constitution. It would seem by analogy, therefore, that, if the Legislature was vested with power to confer the right to vote upon women for- school directors, because that is not an office created by the Constitution, and because the General Assembly had been given power to provide for the maintenance of common schools,
 
 a fortiori
 
 the charter of a city, by which a part of the sovereign, governmental power may be exercised under the sanction of the Constitution itself, which conferred upon women the right to vote for municipal elective officers and to be elected to and hold a municipal office, not created by the Constitution but by the charter itself, is valid.”
 

 It seems to us that there could not be a more forthright statement to the effect that the selection of municipal officers is a matter of purely local concern, and that the method of their selection and the-tenure of their office may legally be limited or circumscribed by the provisions of a municipal charter adopted in pursuance of Section 7, Article XVIII of the Constitution.
 

 In the case of
 
 State, ex rel. Frankenstein,
 
 v.
 
 Hillenbrand,
 
 100 Ohio St., 339, in paragraph one of the syllabus this court held:
 

 “Section 7 of Article XVIII of the Constitution of Ohio vests in cities adopting a charter the power to prescribe the manner of the selection of their own purely municipal officers.”
 

 Judge Robinson stated on page 343 of the opinion:
 

 “Whatever difficulty this court may have encountered in accurately designating the subjects compre
 
 *216
 
 hended in ‘local self-government,’ as contradistinguished from ‘local police, sanitary and other similar regulations,’ it has had no difficulty in arriving at the conclusion that the qualification, duties and manner of selection of officers, purely municipal, come within the purview of the provision granting a city ‘local self-government.’ ”
 

 It would seem obvious not only from what this court has said with reference to the selection of municipal officers as being a matter of purely local concern, but also from the dictates of common sense, that the method of selection of municipal officers, their compensation and their purely local duties are matters which do not conflict with any general problem or concern of the state at large.
 

 By its charter the city of Hamilton has chosen to elect its councilmen for conditional two-year terms. The condition of that election is that the term shall be for two years unless, under the provisions of the charter, a councilman is recalled by a majority vote of the electors. His term is not for two years, it is only for two years if he is not legally recalled under the provisions of the charter. A recall is not based upon the' breach of any law, moral turpitude or other matter reflecting upon the character or fitness of the councilman concerned to hold office. The recall is simply a device which the people of Hamilton have seen fit to write into their charter, by which the councilman can he called to the test of a popular vote as to his right to continue in office. The prospective councilman knows, when he is a candidate for the office, the conditions of its tenure, and, therefore, by his election, he secures no vested right in anything except a conditional two-year tenure as restricted in the charter.
 

 How can this matter be of concern to any inhabitant of this state living outside the city limits of Hamilton?
 

 
 *217
 
 The
 
 Brown case,
 
 supra, had to do with the removal of a county treasurer elected under, state laws. His removal was for a cause involving moral turpitude and the commission of a. crime. This court very properly held that, under Section 38, Article II of the Constitution, no such removal could be accomplished without a complaint and hearing.
 

 We do not see, however, that Section 38, Article II, can have any bearing upon the present case. Here we have a situation which does not involve a removal of an officer for cause, which is an essential element in the operation of Section 38, Article II, but we have, on the other hand, the functioning of the machinery provided by the charter of the city of Hamilton for the operation of a condition concerning the restricted two-year term of a member of its council.
 

 We are aware that in the Constitutional Convention of 1912 there was heated debate upon a proposal to write a recall provision into the Constitution of Ohio, and that that proposal was rejected. It might be argued from that action that this state does not approve of the recall, and assuredly a large proportion, perhaps a great majority of the people, regard the recall of public officials as a silly and unwise device. But if Section 3 and Section 7 of Article XVIII of the Ohio Constitution are to have any meaning, and are not to be completely emasculated and eviscerated, we are constrained to hold that in matters of purely local concern the municipality has the right, in adopting its charter, to make provisions that may be silly and unwise. If they prove to be so, the remedy is in the hands of the people who have adopted the charter. A majority of them has the power to amend it.
 

 It must be remembered that there is no provision in the Ohio Constitution prohibiting a recall provision in a municipal charter adopted pursuant to Section 7, Article XVIII, and there is no compulsion upon a
 
 *218
 
 municipality to adopt such a charter. A municipality automatically has the form of government prescribed by the statutes of the state unless its citizens voluntarily adopt a charter pursuant to the constitutional provision, and where a majority of the sovereign voters do adopt such a charter it is not for the courts to question the wisdom or desirability of the provisions ■ of such charter in respect to purely local affairs.
 

 Since the charter of the city of Hamilton requires the city clerk, upon the filing of a proper affidavit, to deliver to the elector making the affidavit copies of the petition papers provided for in the recall provisions of the charter, and since this is a clear, legal duty devolving upon the city clerk, and since the recitals of the petition in the present case show that the relator has done all things required by the charter in reference to the filing of such affidavit, the city clerk is required to issue such recall petition forms and papers.
 

 The demurrer to the petition is overruled, and a writ of mandamus will issue directing respondent to deliver to relator recall petition forms and papers, as prayed for.
 

 Writ allowed.
 

 Weygandt, C. J., Turnee, Matthias, Hart, Zimmeeman and Sohngen, JJ., concur.