Matthias, J.
The question presented in this case is stated by the plaintiff as follows: Is the last sentence of Section 4678-2, General Code, which reads, ‘ ‘ This act shall not apply to any city or village having a charter form of government,” unconstitutional because it does not comply with Section 26, Article II of the Constitution reading, “All laws, of a general nature, shall have a uniform operation throughout the state * * *”?
The record shows that in both the Court of Common Pleas and the Court of Appeals the invalidity of the last sentence of Section 4678-2, General Code, was either conceded or not challenged.
Sections 4678-1 and 4678-2, General Code, are as follows:
Section 4678-1. “Before letting or making any contract for the construction, reconstruction, widening, resurfacing or repair of a street or other public way; *518 the director of public service, in the case of a city; or the council, in the case of a village, shall cause to be made an estimate of the cost of such work, which estimate shall include labor, materials, freight, fuel, hauling, overhead expense, workmen’s compensation premiums, use of machinery and equipment and all other items of cost and expense. In cities and villages having an engineer, or other officer having a different title but the duties and functions of an engineer, such estimate shall be made by such engineer or other officer. Where the total estimated cost, as hereinbefore defined, of any such construction, reconstruction, widening, resurfacing or repair, planned or projected on any street or other public way, exceeds one thousand dollars, the proper officers of the municipal corporation shall be required to invite and receive competitive bids for furnishing' all the labor, materials and equipment and doing the work, after due newspaper advertisement as provided by law, and to consider and reject such bids before ordering the work done by force account or direct labor. When such bids are received, considered and rejected, and the work done by force account or direct labor, such work shall be performed in compliance with the plans and specifications upon which the bids were based. The word ‘street’ used in this act, shall include portions of connecting streets, on which the same or similar construction, reconstruction, widening, resurfacing or repair may be planned or projected. It shall be unlawful to divide a street or connecting streets into separate sections for the purpose of defeating the provisions of this act.”
Section 4678-2. “Where the proper officers of any municipal corporation construct, reconstruct, widen, resurface or repair a street or other public way by force account or direct labor, and the estimated cost of the work as defined in the preceding section exceeds *519 one thousand dollars, such municipal authorities shall cause to be kept by the city or village engineer, or other officer or employee of the municipal corporation in charge of such work, a complete and accurate account in detail of the cost of doing such work, which account shall include labor, materials, freight, fuel, hauling, overhead expense, workmen’s compensation premiums, and all other items of cost and expense, including a reasonable allowance for the use of all tools and equipment used on or in connection with such work, and also for the depreciation thereon. It shall be the duty of such engineer or other officer or employee to keep such account, and within ninety days after the completion of any such work he shall be required to prepare a detailed and itemized statement of such cost and file the same with the officer or board vested with authority under the provisions of the General Code to direct the doing of the work in question. Such officer or board shall thereupon examine such statement and correct the same if necessary and shall cause such statement to be filed in his or its office. Such statement shall be kept on file for not less than two years and shall be open to public inspection. It shall be the duty of the Bureau of Inspection and Supervision of Public Offices of the Department of the Auditor of State to examine into and report upon the observance of the provisions of this and the preceding section by the several municipal corporations of the state. This act shall not apply to any city or village having a charter form of government.”
In considering the effect of the last sentence of Section 4678-2, General Code, reference is made to the following provisions in the Ohio Constitution:
Section 1 of Article XVIII, which is as follows:
“Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all *520 others shall be villages. The method of transition from one class to the other shall be regulated by law. ’ ’
Section 7 of Article XVIII, which is as follows:
“Any municipality may frame and adopt or amend a charter for its government and may, subject-to the provisions of section 3 of this article, exercise thereunder all powers of local self-government. ’ ’
Section 3 of Article XVIII, which is as follows:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. ’ ’
Section 13 of Article XVIII, which provides as follows:
“Laws may be passed to limit the power of municipalities to levy taxes and' incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.”
Does the proviso in Section 4678-2, General Code, that it shall not apply to charter cities, render that statute unconstitutional?
The contention is made that it violates Section 26 of Article II of the Constitution requiring that “all laws, of a general nature, shall have a uniform operation throughout the state * * *.” The basis of this contention is primarily the decision in the case of City of Elyria v. Vandemark, 100 Ohio St., 365, 126 N. E., 314, paragraphs two and three of the syllabus of which are as follows:
“2. The Constitution of the state having classified municipalities on a basis of population, the Legislature is without authority to make further classifica *521 tion thereof for the purpose of legislation affecting municipal government.
“3. The provisions of Section 4250, General Code, as amended 106 Ohio Laws, 483, purporting to authorize the council in cities having a population of less than twenty thousand to merge the office of director of public safety with that of the director of public service, are in conflict with the provisions of Section 1, Article XVIII of the Constitution of Ohio.”
The opinion therein relates the history of the legislative classification of cities which took place under the provisions of the Constitution of 1851 that “the General Assembly shall provide for the organization of cities, and incorporated villages by general laws.” It notes that further classification was made by the General Assembly with the number of classes and grades of cities being constantly increased and the limitations of each grade or class of cities constantly decreased until the legislation for the government of municipalities became special in its nature although still under the guise and in the form of general laws. Discussing present Section 1 of Article XVIII of the Ohio Constitution, the opinion states as follows:
“The Constitution adopted in 1912 did not leave to the Legislature the matter of classification of municipalities. The constitutional convention retained the provision that ‘general laws shall be passed to provide for the government of cities and villages,’ substantially as in the former Constitution, but in furtherance of its manifest and clearly expressed purpose to take from the Legislature the power theretofore exercised by it relative to the government of the municipalities of the state and to confer such powers of local self-government directly upon the municipalities themselves the Constitution provides in Section 1, Article XVIII, that ‘municipal corporations are hereby classified into cities and villages. All such cor *522 porations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from .one class to the other shall be regulated by law. ’ It is to be observed that the constitutional convention not only did not confer any power whatever upon the Legislature to make any classification of municipalities, but it denied the Legislature such authority by retaining and exercising that jurisdiction itself. It thereby withheld that subject absolutely and entirely from legislative control and permitted it to be no longer a matter of statutory jurisdiction. The General Assembly has no power to enlarge or limit a jurisdiction specifically conferred by the Constitution. (Cincinnati Polyclinic v. Balch, 92 Ohio St., 415.) It seems equally clear that a jurisdiction assumed and exercised by the Constitution itself cannot be exercised also by the Legislature in the absence of authority conferred upon it so to do by express and explicit provision of the Constitution.
“It having been declared by the Constitution that the municipalities of the state should be classified upon the basis of population into cities and villages, it must be presumed that it was intended that there should be no further classification for the purpose of legislation affecting municipal government.”
The holding of this court in the Elyria case, supra, has not been changed or modified. However the question presented in that case differs materially from the issue here. There the General Assembly was attempting to create an arbitrary classification within the constitutional definition of “city” and was thus again entering upon a program of special legislation for cities, in violation of the rule announced by this court in the case of State, ex rel. Knisely, v. Jones, 66 Ohio St., 453, 64 N. E., 424. It is definitely settled that the General Assembly has no power to classify municipalities on the basis of population.
*523 It must be recognized, however, that Sections 7, S and 9 of Article XVIII of the Constitution of Ohio, authorizing any city or village to provide by election for the adoption of a charter, have the effect of creating within the Constitution itself two kinds of municipalities for governmental purposes — charter and non-charter. This classification is not in conflict with that established by Section 1, Article XVIII of the Constitution, but is in accord therewith.
The General Assembly in the enactment of laws for the governing of the purely local affairs of municipalities has followed and applied this distinction between charter and noncharter cities. As examples see the following:
Section 3515-2, General Code (plans of government for municipalities not to be submitted while the question of the adoption of a charter is pending); Section 4000-14, General Code (relating to indeterminate permits by municipalities'to public utilities and which provides that “nothing in this act shall be construed to deprive any municipality of its rights to prescribe, by charter, any other methods, terms or conditions * * * upon which indeterminate permits may be granted in such municipality”); Section 5625-14, General Code (ten-mill limitation “shall not apply to the tax levies of any municipality which, by its charter or amendment thereto, provides or has provided for a limitation of the total tax rate”); and Section 4676-1, General Code (charter cities may pass legislation making improvements and levying assessments in a manner differing from the general law).
These statutes and others, including Sections 4678-1 and 4678-2, General Code, were so enacted by reason of the authority conferred by the Constitution upon charter cities to adopt different procedures in purely local matters, subject to the special limitations authorized by Section 13, Article XVIII of the Constitution, *524 relating to debts and controls of fiscal matters. It need only be stated that the General Assembly has not enacted any applicable limitation.
It has also been repeatedly field by this court that where the General Assembly has enacted a law relating to purely local matters and the municipality under its charter powers has adopted a different provision relating thereto, the charter will control and by virtue of the charter such city is excepted from the general statute. Flotron v. Barringer, 94 Ohio St., 185, 113 N. E., 830; State, ex rel. Frankenstein, v. Hillenbrand, 100 Ohio St., 339, 126 N. E., 309; Switzer v. State, ex rel. Silvey, 103 Ohio St., 306, 133 N. E., 552; State, ex rel. Hackley, v. Edmonds, Clerk, 150 Ohio St., 203, 80 N. E. (2d), 769, and cases cited.
The purpose of the adoption of a home-rule charter is to provide for local self-government and secure exemption from general laws. This has been repeatedly recognized by this court and there is no basis for the suggestions now made that differentiation between charter and noncharter cities is in violation of the Constitution which expressly creates that distinction.
We, therefore, hold that the last sentence of Section 4678-2, General Code, does not make such statutes unconstitutional, but. that they are valid constitutional enactments. The Court of Common Pleas erred in granting an injunction as did the Court of Appeals in affirming the judgment.
Tfie judgment of tfie Court of Appeals is accordingly reversed and tfie cause remanded to tfie Court of Common Pleas for further proceedings in accord with tfiis opinion.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taet and Hart, JJ., concur.