THE CITY OF LIMA, APPELLEE, *v.* THE STATE OF OHIO, APPELLANT.

THE CITY OF AKRON, APPELLEE, *v.* THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as *Lima v. State,* 122 Ohio St.3d 155, 2009-Ohio-2597.]

*Municipalities — Residency requirements for employment with municipality — R.C. 9.481 — Statute forbidding political subdivisions to require employees to live within city limits overrides local legislation imposing such requirements — Statute enacted pursuant to authority granted by Section 34, Article II, Ohio Constitution.*

(Nos. 2008-0128 and 2008-0418 — Submitted January 20, 2009 — Decided June 10, 2009.)

APPEAL from the Court of Appeals for Allen County, No. 1-07-21, 177 Ohio App.3d 744, 2007-Ohio-6419.

APPEAL from the Court of Appeals for Summit County, No. 23660, 2008-Ohio-38.

_____

PFEIFER, J.

{¶ 1}   R.C. 9.481(B)(1) states that "no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state."   The issue in this case is whether R.C. 9.481 was enacted pursuant to the authority granted to the General Assembly by Section 34, Article II of the Ohio Constitution.   If it was so enacted, its provisions override any conflicting law of a political subdivision, including residency requirements imposed by municipalities pursuant to the Home Rule Amendment, Section 3, Article XVIII of the Ohio Constitution.   We hold that R.C. 9.481 was enacted pursuant to the authority granted by Section 34 and that the local laws before us in this case therefore cannot stand.

## I.  City of Lima, case No. 2008-0128

{¶ 2}  Lima City Charter Section 72 allows the Lima City Council to establish a residency requirement for city employees.  Pursuant to this authority, the Lima City Council passed Ordinance 201-00, requiring all employees appointed by the mayor to reside within the city limits.  When R.C. 9.481 was enacted, the city of Lima brought a civil action against the state seeking a declaration that the statute is unconstitutional, contending that it falls outside Section 34, Article II, because R.C. 9.481 does not involve all employees.  Lima further asserted that R.C. 9.481 violates the city's powers of self-government under Sections 3 and 7, Article XVIII of the Ohio Constitution.

{¶ 3}  The trial court granted summary judgment for the state, ruling that R.C. 9.481 is constitutional because it was enacted pursuant to the broad authority granted to the legislature under Section 34, Article II.  Therefore, R.C. 9.481 prevails over the city of Lima's residency requirements.  The court of appeals reversed, holding that R.C. 9.481 is not "economic legislation" and does not concern employees' working environment, and therefore it could not have been enacted pursuant to Section 34, Article II.  *Lima v. State,* 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, ¶ 61.  Thus, the statute cannot prevail over the home-rule provisions of the Constitution.  Because R.C. 9.481 interferes with local self-government and because it is not a "general law," it violates Section 3, Article XVIII of the Ohio Constitution, which authorizes political subdivisions to "exercise all powers of local self-government."

## II.  City of Akron, case No. 2008-0418

{¶ 4}  Sections 105a and 106(5b) of the Charter of the City of Akron require that classified and unclassified civil servants of Akron reside within Akron for the duration of their employment. On May 1, 2006, the city of Akron filed a complaint seeking a declaration that R.C. 9.481's prohibition against residency

requirements is unconstitutional facially and as applied. The complaint contends that R.C. 9.481 could not have been enacted under Section 34, Article II of the Ohio Constitution, because it does not provide for the comfort, health, safety, and welfare of employees. The complaint further alleged that R.C. 9.481 unconstitutionally interferes with the powers of local self-government granted by Section 3, Article XVIII of the Ohio Constitution.

{¶ 5} On May 2, 2006, the Akron firefighter and police unions filed a complaint against the city of Akron and Mayor Donald L. Plusquellic seeking a declaration that R.C. 9.481 prevails over the city's residency requirements. The trial court consolidated the cases and granted summary judgment for the state and the unions.

{¶ 6} The trial court determined that R.C. 9.481 was enacted for the "general welfare" of employees and therefore comes within the purview of Section 34, Article II of the Ohio Constitution. Because Section 34 provides that "no other provision of the constitution shall impair or limit" the General Assembly's power to enact legislation pursuant to the authority granted by that section, the Home Rule Amendment has no application, and the charter provision must fall.

{¶ 7} The city of Akron appealed, and the court of appeals reversed, holding that the legislature's broad authority under Section 34 to pass laws for the "general welfare" of employees does not include the authority to enact R.C. 9.481. The court reasoned that R.C. 9.481, unlike other legislation upheld under Section 34, "does not address any significant social issues impacting the public at large; it is not part of a comprehensive legislative scheme, but deals with a single issue; and it applies to a relatively small segment of the population (those who are employed by political subdivisions, are subject to residency requirements, and would choose to live elsewhere if allowed to do so)." *State v. Akron,* Summit

3

App. No. 23660, 2008-Ohio-38, at ¶ 24. The court further ruled that R.C. 9.481 is not a "general law." Id. at ¶ 32-33. Thus, the Akron provisions are not prohibited by the Home Rule Amendment's ban on local laws that conflict with "general laws." See Section 3, Article XVIII, Ohio Constitution (municipalities shall have power to pass such local laws "as are not in conflict with general laws").

{¶ 8} The causes are before this court pursuant to the allowance of discretionary appeals.

### III. Analysis

{¶ 9} It is abundantly clear that Sections 105a and 106(5b) of the Charter of the City of Akron and Lima City Ordinance 201-00 conflict with R.C. 9.481. Given this conflict, the issues before us are straightforward: was R.C. 9.481 enacted pursuant to Section 34, Article II of the Ohio Constitution, and if so, does it prevail over ordinances enacted pursuant to Section 3, Article XVIII of the Ohio Constitution? We conclude that R.C. 9.481 was enacted pursuant to Section 34 and that it prevails over conflicting local laws, because no other provision of the Constitution can "limit or impair" laws enacted pursuant to Section 34.

*A. Section 34, Article II*

{¶ 10} Section 34, Article II of the Ohio Constitution states that the General Assembly may enact laws "providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."

{¶ 11} "This court has repeatedly interpreted Section 34, Article II as a broad *grant* of authority to the General Assembly, not as a limitation on its power to enact legislation." (Emphasis sic.) *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 61, 717 N.E.2d 286. See also *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 13, 539 N.E.2d 103 (Section 34 is "a broad grant of authority to the legislature to provide

for the welfare of all working persons"); *Cent. Ohio Transit Auth. v. Transport Workers Union of Am., Local 208* (1988), 37 Ohio St.3d 56, 62, 524 N.E.2d 151.

{¶ 12} On at least three separate occasions, this court has upheld the constitutionality of statutes enacted pursuant to Section 34, Article II. In *Rocky River*, we relied on Section 34 in upholding the constitutionality of a statute that mandated binding arbitration between a city and its safety forces in the event of a collective-bargaining impasse, rejecting the city's argument that the statute interfered with its home-rule powers. Id. at paragraph two of the syllabus. In *State ex rel. Bd. of Trustees of Police & Firemen's Pension Fund v. Bd. of Trustees of Police Relief & Pension Fund of Martins Ferry* (1967), 12 Ohio St.2d 105, 106, 41 O.O.2d 410, 233 N.E.2d 135, we upheld as constitutional a statute that required local police pension funds to surrender their assets to a newly created state-controlled disability and pension fund for police officers and fire fighters, again rejecting objections based on home rule in favor of a broad reading of Section 34. Although the case did not involve a home-rule issue, *Am. Assn. of Univ. Professors* upheld as constitutional under Section 34's "broad grant of authority" a statute that increased teaching-hour requirements for faculty at state universities. 87 Ohio St.3d at 62, 717 N.E.2d 286.

{¶ 13} As we noted at the outset, R.C. 9.481 states that "no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state." Considering the statutes declared constitutional in *Rocky River*, *Am. Assn. of Univ. Professors,* and *Pension Fund*, we conclude that R.C. 9.481 provides for the comfort and general welfare of employees. By allowing city employees more freedom of choice of residency, R.C. 9.481 provides for the employees' comfort and general welfare. Requiring employees to live in a specific city, as Sections 105a and 106(5b) of the Charter of the City of Akron and Lima City Ordinance 201-00 do, conflicts with the

prohibition in R.C. 9.481 against such residency restrictions. The General Assembly expressly declared in enacting the statute that "it is a matter of statewide concern to generally allow the employees of Ohio's political subdivisions to choose where to live, and that it is necessary to generally prohibit political subdivisions from requiring their employees, as a condition of employment, to reside in any specific area of the state in order to provide for the comfort, health, safety, and general welfare of those public employees." 2006 Sub.S.B. No. 82, Section 3. Although it does not affect our constitutional analysis, we note that the General Assembly included in R.C. 9.481 an exception that permits localities to require certain employees to live no farther away than adjacent counties to "ensure adequate response times * * * to emergencies or disasters." R.C. 9.481(B)(2)(b).

{¶ 14} Here, as in *Am. Assn. of Univ. Professors*, the General Assembly believed that "the public interest necessitated legislative intervention. It enacted a law, therefore, to address and modify the existing concern." 87 Ohio St.3d at 61, 717 N.E.2d 286. R.C. 9.481 provides for the comfort and general welfare of public employees by ensuring that they will be able to choose the municipality in which they reside. We hold that R.C. 9.481 was enacted pursuant to the authority granted in Section 34, Article II.

*B. R.C. 9.481 Prevails over Ordinances*

{¶ 15} Section 34, Article II states that "no other provision of the constitution shall impair or limit" the General Assembly's ability to enact laws pursuant to that section. We have stated that Section 34 "expressly states in 'clear, certain and unambiguous language' that *no other provision* of the Constitution may impair the legislature's power under Section 34. [*Pension Fund*, 12 Ohio St.2d] at 107, 41 O.O.2d at 412, 233 N.E.2d at 137. This prohibition, of course, includes the 'home rule' provision contained in Section 3, Article XVIII.

Id. at 106, 41 O.O.2d at 411, 233 N.E.2d at 137." (Emphasis sic.) *Rocky River*, 43 Ohio St.3d at 13, 539 N.E.2d 103. Thus, even if we assume that Sections 105a and 106(5b) of the Charter of the City of Akron and Lima City Ordinance 201-00 were enacted pursuant to Section 3, Article XVIII, which authorizes municipalities "to exercise all powers of local self-government," they cannot stand because they "impair or limit" the power of the General Assembly to enact R.C. 9.481 pursuant to Section 34. See *Dayton v. State*, 176 Ohio App.3d 469, 2008-Ohio-2589, 892 N.E.2d 506, ¶ 77 (Section 34 is a grant of plenary power not subject to limitations). But see *Rocky River*, 43 Ohio St.3d at 36-37, 539 N.E.2d 103 (Wright, J., dissenting) (expressing concern over the notion that no statute enacted pursuant to Section 34 may ever be held unconstitutional based on any other provision in the Ohio Constitution).

{¶ 16} Because we conclude that the General Assembly enacted R.C. 9.481 pursuant to Section 34, Article II of the Ohio Constitution, "the home-rule sections do not apply, [and] we make no further comment on the home-rule arguments of the parties." *Rocky River*, 43 Ohio St.3d at 13, 539 N.E.2d 103. Our resolution of this case also makes it unnecessary for us to address the argument that Sections 105a and 106(5b) of the Charter of the City of Akron and Lima City Ordinance 201-00 would prevail if R.C. 9.481 had been enacted pursuant to a section of the Constitution other than Section 34 or the argument that R.C. 9.481 is not a "general law" addressing a matter of "statewide concern." Because "no other provision of the constitution shall impair or limit" the power granted to the General Assembly pursuant to Section 34, Article II, R.C. 9.481 prevails over Sections 105a and 106(5b) of the Charter of the City of Akron and Lima City Ordinance 201-00.

### IV. Conclusion

**{¶ 17}** We conclude that R.C. 9.481 is constitutional and, therefore, that municipalities may not require their employees to reside in a particular municipality, other than as provided in R.C. 9.481(B)(2)(b).

Judgments reversed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and LANZINGER, J., dissent.

_____

**O'DONNELL, J., concurring.**

**{¶ 18}** Lest any reader be confused by the analysis offered in the dissenting opinions filed here, this is not a home-rule analysis case.

**{¶ 19}** Rather, the simple holding of this case involves an interpretation that the phrase "general welfare of all employes," as set forth in Section 34, Article II of the Ohio Constitution, authorizing the legislature to enact laws relating to "hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes," includes restrictions on where employees may reside as a condition of employment. Nothing more. It is neither an expansion of language nor an undercutting of dual sovereignty.

**{¶ 20}** For more than two decades, this court has held this section of the Ohio Constitution to be a broad grant of legislative authority. *Am Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 61, 717 N.E.2d 286; see also *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 41, 539 N.E.2d 103; *Cent. Ohio Transit Auth. v. Transport Workers Union of Am., Local 208* (1988), 37 Ohio St.3d 56, 62, 524 N.E.2d 151.

**{¶ 21}** Nothing in *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, suggests anything unusual about future home-rule cases. In *Clyde*, we applied our widely recognized, three-step home-rule analysis and concluded that the city's ordinance, banning concealed

handguns in city parks, was unconstitutional because it constituted an exercise of police power that conflicted with a general state law. Id. at ¶1.

{¶ 22} Moreover, despite any claims to the contrary, we have applied the same three-step home-rule analysis utilized in *Clyde* to uphold the valid exercise of home-rule authority by municipalities. See, e.g., *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, syllabus ("An Ohio municipality does not exceed its home rule authority when it creates an automated system for enforcement of traffic laws that imposes civil liability upon violators, provided that the municipality does not alter statewide traffic regulations"); *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963 (holding that portions of R.C. 3781.184 were not "general laws" and therefore violated the Home Rule Amendment when they prevented political subdivisions from prohibiting or restricting the location of manufactured homes in any zone or district in which a single-family home is permitted, but permitted private landowners to incorporate such prohibitions in restrictive covenants). Thus, despite claims to the contrary, constitutional home-rule authority retains its vitality in Ohio.

PFEIFER, LUNDBERG STRATTON, and CUPP, JJ., concur in the foregoing opinion.

_____

**MOYER, C.J., dissenting.**

{¶ 23} I concur in the dissenting opinion of Justice Lanzinger for all of the reasons she has expressed regarding the misapplication of Section 34, Article II of the Ohio Constitution by the majority opinion.

{¶ 24} I write separately to observe that with the rationale used by the majority in this case and by the majority in *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, a course has been set that will result in the resolution of very few important policy decisions by

elected officials of local government when the General Assembly decides to intervene. The balance struck in the Ohio Constitution between the officials of local government determining those issues that have no statewide application and the General Assembly determining issues of general public interest is now tipped dramatically against the authority of local elected officials under the new conception of home rule.

{¶ 25} I suggest that if such a dramatic change in the application of constitutional principles is to be created, it should be through an amendment to the Ohio Constitution and not through the decisions of this court.

{¶ 26} Because today's decision once again undercuts the system of dual sovereignty established in the Ohio Constitution and supported by earlier decisions of this court, I respectfully dissent from the decision and the opinion of the majority.

LANZINGER, J., concurs in the foregoing opinion.

_____

**LANZINGER, J., dissenting.**

{¶ 27} Because the majority interprets the reach of Section 34, Article II of the Ohio Constitution too broadly, I respectfully dissent. In plain terms, Section 34 enables the General Assembly to pass laws related to hours of labor, minimum wage, and the health, safety, and general welfare of all employees. By expanding this language to include the authority to ban residency requirements by political subdivisions, the majority has opened the door for the General Assembly to use this section – which trumps all other constitutional provisions – in a conceivably limitless variety of situations to eviscerate municipal home rule. I would hold that R.C. 9.481 was not enacted pursuant to Section 34 authority, and that the Section 3, Article XVIII municipal home-rule provision of the Constitution prevails over R.C. 9.481.

## I.  Section 34, Article II of the Ohio Constitution Grants a
## Circumscribed Power

{¶ 28} In concluding that R.C. 9.481(B)(1) was validly enacted, the majority reads Section 34 of the Ohio Constitution very broadly.  I believe that the Court of Appeals for Allen County correctly applied the interpretive rule of noscitur a sociis to Section 34.  See *Lima v. State*, 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, ¶ 32-36.  This rule of statutory construction "follows from the premise that 'the coupling of words denotes an intention that they should be understood in the same general sense.' "  *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105, quoting 2A Sutherland Statutory Construction (5 Ed.Singer Rev.1992) 183, Section 47.16.

{¶ 29} Section 34 provides that "[l]aws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power." Looking at the words together, we see that this section gives the General Assembly authority to enact legislation relating to (1) hours of labor, (2) minimum wages, and (3) the comfort, health, safety, and general welfare of all employees. The first two clauses of Section 34 specifically concern work-related conditions:  hours and wages.  The rule of noscitur a sociis requires that the third clause ("the general welfare clause") be similarly limited to work-related conditions.  Because a person's place of residence is not work-related, I would hold that Section 34 does not give the legislature the authority to enact laws eliminating municipal residency requirements.

{¶ 30} During the sessions of the 1912 Constitutional Convention, Judge Dennis Dwyer, temporary chairman of the Constitutional Convention and member of the Committee on Labor, offered a statement on the purpose of the proposal

that became Section 34: "Therefore, give your employes fair living wages, good sanitary surroundings during hours of labor, protection as far as possible against danger, a fair working day. Make his life as pleasant for him as you can consistent with his employment." 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913) 1332-1333.

{¶ 31} The proposal that arose from the constitutional convention and became Section 34 was prompted by "a desire among the drafters to improve the working conditions of men, women, and children in terms of the number of hours of work each day, the minimum wage to be paid, and the *environment in which work was being performed*." (Emphasis added.) *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 28, 539 N.E.2d 103 ("*Rocky River IV*") (Wright, J., dissenting).

{¶ 32} R.C. 9.481(B)(1)'s limitation on the authority of political subdivisions to place residency requirements on their employees puts the statute outside of the scope of Section 34.[1] The statute applies only to political subdivisions — every other employer in the state is free to require that its employees reside in a specific area of the state. Because R.C. 9.481(B)(1) does not fall within the scope of the general welfare clause and applies only to a limited class of employees of the state, rather than *all* employees, I would hold that it was not enacted pursuant to Section 34.

## II. Further Expansion of Section 34 Is Unwarranted

{¶ 33} The majority relies upon three of this court's previous decisions to support its conclusion that R.C. 9.481(B)(1) was validly enacted under Section 34.

---

1. Notably, the Legislative Service Commission expressed concern over whether the statute would survive a constitutional challenge on this point. See Legislative Service Commission Final Bill Analysis, Sub.S.B. No. 82, 126th General Assembly, comment 3.

A close reading of these cases, however, shows that reliance upon these decisions is questionable.

### A. *Am. Assn. of Univ. Professors*

{¶ 34} The first case is distinguishable, because it did not involve a home-rule issue and dealt specifically with hours of labor rather than the general welfare clause. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 717 N.E.2d 286. In challenging a new policy increasing teaching requirements adopted pursuant to R.C. 3345.45, which sought an increase in statewide undergraduate teaching, the association had argued that Section 34 permits the legislature to enact only those laws that benefit employees, and that laws such as R.C. 3345.45 that burden employees are unconstitutional under that section. Id. at 60, 717 N.E.2d 286. The court concluded that R.C. 3345.45 did not violate Section 34 and that R.C. 3345.45 had been enacted to address "a disturbing trend in faculty workload at public universities." Id. at 61, 717 N.E.2d 286. Because the statute under discussion explicitly regulated hours of labor, which R.C. 9.481 does not do, *Am. Assn. of Univ. Professors* is unhelpful in examining the residency ordinances.

### B. *Pension Fund*

{¶ 35} The second case relied upon is a brief, three-page decision granting a writ of mandamus. *State ex rel. Bd. of Trustees of Police & Firemen's Pension Fund v. Bd. of Trustees of Police Relief & Pension Fund* (1967), 12 Ohio St.2d 105, 41 O.O.2d 410, 233 N.E.2d 135 ("*Pension Fund*"). Faced with the near insolvency of a majority of locally administered police and firefighter pension funds, the General Assembly enacted legislation to provide for the central administration of local pension funds through a statewide pension fund modeled after the Public Employees Retirement System. *Rocky River v. State Emp. Relations Bd.* (1988), 39 Ohio St.3d 196, 206-207, 530 N.E.2d 1 (Moyer, C.J.,

dissenting). Although the *Pension Fund* court stated that "the firemen and police of the various localities of Ohio are employees within the scope of [Section 34]," *Pension Fund*, 12 Ohio St.2d at 107, 41 O.O.2d 410, 233 N.E.2d 135, the holding was based on the need for a comprehensive statutory scheme to preserve the solvency of pension funds and thus was a necessary measure for preserving the financial well-being of the state's police officers and firefighters. The case does not support the proposition that an employee's place of residence falls within the scope of Section 34.

### C. Rocky River IV

{¶ 36} The third case relied upon by the majority is *Rocky River IV,* 43 Ohio St.3d 1, 539 N.E.2d 103, which resulted in the expansion of Section 34's scope to include binding arbitration. The case has a unique procedural history.[2]

{¶ 37} In rejecting the city of Rocky River's argument that Section 34 was intended to apply only to matters involving a minimum wage, the majority posed an all-or-nothing dichotomy: either Section 34 applied only to minimum-wage matters, or the plain language of Section 34 encompassed an extremely broad array of subjects. See *Rocky River IV*, 43 Ohio St.3d at 13-16, 539 N.E.2d 103. Concluding in favor of an extremely broad reading, the majority in *Rocky River IV*

---

2. On November 2, 1988, this court issued a four-to-three decision striking down as unconstitutional R.C. 4117.14(I), which mandated binding arbitration after impasses had been reached in certain collective-bargaining disputes between municipal safety forces and municipal employers. *Rocky River v. State Emp. Relations Bd.* (1988), 39 Ohio St.3d 196, 530 N.E.2d 1 ("*Rocky River I*"). On December 13, 1988, the court denied a motion for reconsideration of the case. *Rocky River v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 606, 533 N.E.2d 270 ("*Rocky River II*"). The composition of the court changed in January 1989 as Justice Resnick replaced Justice Locher, and on February 10, 1989, the court announced its extraordinary decision to grant a motion for reconsideration of the previous decision denying reconsideration. *Rocky River v. State Emp. Relations Bd.* (1989), 41 Ohio St.3d 602, 535 N.E.2d 657 ("*Rocky River III*"). Three months later, the court announced its four-to-three decision upholding the constitutionality of R.C. 4117.14(I). *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 539 N.E.2d 103 ("*Rocky River IV*"). See Sweet, Ohio's Ban on Municipal Residency Requirements: Can the Employee Welfare Provision of the Ohio Constitution Protect the Ban from Home Rule Challenges? (2008), 56 Clev.St.L.Rev. 709, 715-724.

relied on *Pension Fund*, which it found "extremely instructive," id. at 16, despite that decision's brevity and lack of legal analysis. The majority considered the code sections upheld in *Pension Fund* and remarked that these sections were "considerably more intrusive on a municipality's power of home rule than [the statute at issue in *Rocky River IV*]." Id. After further stating that "the statutory scheme upheld in *Pension Fund* constituted a substantial infringement of local powers of self-government," the majority concluded that the binding-arbitration statute was validly enacted under Section 34 and therefore unassailable on home-rule grounds. Id. at 17-18, 20, 539 N.E.2d 103.

{¶ 38} R.C. 4117.14(I), the statute at issue in *Rocky River IV*, relates to mandatory arbitration between a city and its safety forces in the event of a collective-bargaining impasse. It requires the parties to accept and implement any final settlement resulting from arbitration. The subject of the impasse was the firefighters' salary. *Rocky River IV*, 43 Ohio St.3d at 1, 539 N.E.2d 103. As with salary, the primary subjects of any potential mandatory arbitration would likely involve hours, wages, or other work-related conditions. The mandatory-arbitration provision therefore arguably falls under the purview of Section 34, unlike residency requirements. But the all-or-nothing approach in *Rocky River IV* allowed the court to open the door for a seemingly unlimited reading of Section 34, unfettered by any other constitutional provision. If there are no limits on the subject matter the legislature may address under the rubric of "general welfare of all employes," then it has limitless power to enact any and all laws that arguably affect employees in the state.

{¶ 39} An analysis of the level of infringement on local powers of self-government is irrelevant to the question of whether a law is validly enacted pursuant to Section 34. The *Rocky River IV* majority needed only to look at whether the mandatory-arbitration statute related to any of the subjects listed in

Section 34. Second, by choosing to base its analysis on the level of infringement on self-government powers, the *Rocky River IV* majority conflated Section 34 and home-rule analyses. *Rocky River IV* is therefore of little precedential value.

*D. The Limits of Section 34*

{¶ 40} While I agree with the majority that, considered together, *Am. Assn. of Univ. Professors*, *Pension Fund*, and *Rocky River IV* stand for the proposition that Section 34 does grant broad power to the General Assembly, I also agree with the Allen County Court of Appeals' characterization of the *Am. Assn. of Univ. Professors*, *Pension Fund*, and *Rocky River IV* decisions as all dealing with "employee economic welfare." *Lima v. State*, 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, at ¶ 54. *Am. Assn. of Univ. Professors* specifically concerns hours of labor. *Pension Fund* and *Rocky River IV* deal specifically with wages and collective bargaining, two issues that directly touch upon work-related conditions. The broad power given under Section 34 is circumscribed and does not extend so far as to allow the General Assembly to regulate where a person might reside.

{¶ 41} The majority concludes its Section 34 analysis by stating, "R.C. 9.481 provides for the comfort and general welfare of public employees by ensuring that they will be able to choose the municipality in which they reside." Majority opinion at ¶ 14. This statement ignores the fact that the general welfare clause of Section 34 is limited to work-related conditions and instead opens the door for the General Assembly to justify any legislation that affects employees. Under the majority's overly broad reading of Section 34, the state would conceivably have the power to enact legislation mandating that employees be required to live in the municipality in which they are employed. I would not give the General Assembly such broad power in contravention of the plain language of

Section 34, particularly when the supremacy clause within that section makes an enactment under it virtually unassailable.

{¶ 42} Because I contend that R.C. 9.481 was not enacted pursuant to Section 34, I would conduct a home-rule analysis to determine whether the municipal enactments in these cases conflict with R.C. 9.481.

### III. The Municipal Residency Requirements Prevail under Home Rule

{¶ 43} In Ohio, the home-rule powers of municipalities arise from Section 3, Article XVIII of the Ohio Constitution, which provides that municipalities are authorized "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." To evaluate whether a municipal charter or ordinance has exceeded the municipality's home-rule powers, we use a three-part test. A state statute takes precedence over a local ordinance when "(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17.

#### A. *The Municipal Enactments Are a Matter of Local Self-Government*

{¶ 44} If municipal charters or city ordinances that are alleged to conflict with a state statute relate solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction. *Am. Financial Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23. The test for determining whether municipal actions constitute self-government is stated in *Cleveland Elec. Illuminating Co. v. Painesville* (1968), 15 Ohio St.2d 125, 44 O.O.2d 121, 239 N.E.2d 75 ("*C.E.I.*"): " 'To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the

proceedings thereunder must be considered. If the result affects only the municipality itself, with no extraterritorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly.' " Id. at 129, 44 O.O.2d 121, 239 N.E.2d 75, quoting *Beachwood v. Cuyahoga Cty. Bd. of Elections* (1958), 167 Ohio St. 369, 371, 5 O.O.2d 6, 148 N.E.2d 921. The existence of adverse extraterritorial effects does not automatically mean an ordinance is not a matter of self-government. *Cleveland v. Shaker Hts.* (1987), 30 Ohio St.3d 49, 30 OBR 156, 507 N.E.2d 323, paragraph two of the syllabus ("Adverse extraterritorial traffic effects on a neighboring municipality are not, standing alone, enough to overcome the presumption of the validity of a legislative enactment taken under a municipality's home rule powers").

{¶ 45} We have applied the *C.E.I.* test in holding that "[a] chartered municipality, under its home-rule authority, may enact an ordinance limiting the jurisdiction of its civil service commission to only city employees notwithstanding R.C. 124.011(A)." *Ohio Assn. of Pub. School Emp., Chapter No. 471 v. Twinsburg* (1988), 36 Ohio St.3d 180, 522 N.E.2d 532, at syllabus. In *Twinsburg,* the association had argued that an ordinance limiting the constituency to be served by its local civil service commission was a matter of statewide concern rather than local self-government. Even though the ordinance limited access to the city's civil service commission by excluding a multi-city school district, we concluded that the ordinance related solely to the government and administration of the internal affairs of the municipality. Id. at 184, 522 N.E.2d 532. The potential extraterritorial effects of excluding a multi-city school district from the jurisdiction of a municipality's civil service commission bear some similarities to the potential extraterritorial effects of residency requirements. But as with the

ordinance in *Twinsburg*, the residency requirements here relate solely to the municipalities' self-government.

{¶ 46} The state argues that it has a strong interest in ensuring open and fair access for all Ohioans to public-sector employment opportunities and in promoting free choices by its citizens for where their families should reside.[3] However, these justifications do not require a conclusion that municipal-residency requirements affect the general public of the state as a whole more than they do the city residents. There is no constitutional right to be employed by a municipality, let alone to be so employed while living elsewhere. *McCarthy v. Philadelphia Civ. Serv. Comm.* (1976), 424 U.S. 645, 646-647, 96 S.Ct. 1154, 47 L.Ed.2d 366; *Buckley v. Cincinnati* (1980), 63 Ohio St.2d 42, 44, 17 O.O.3d 26, 406 N.E.2d 1106. Municipalities clearly have a strong interest in the qualifications of their employees and the makeup of their work forces. Just as a private employer may seek employees who are invested members of the local community, a municipality may place a great premium on hiring individuals who exhibit a high level of commitment to that municipality.

{¶ 47} It is well settled that the terms and conditions of employment for municipal officers are purely a local matter. See, e.g., *State ex rel. Frankenstein v. Hillenbrand* (1919), 100 Ohio St. 339, 343, 126 N.E. 309 (qualification, duties, and manner of selection of municipal officers come within the purview of local self-government.); *State ex rel. Hackley v. Edmonds* (1948), 150 Ohio St. 203,

---

3. The interpretation of Ohio law by the Legislative Service Commission conflicts with the state's position: "Residency requirements for municipal employees most likely are a matter of local self-government, which can be overcome only when there is a state law expressing a matter of statewide concern. Case law has shown Ohio courts recognize the local nature of employment matters involving residency issues. While there may be some extraterritorial impact from municipal ordinances creating residency requirements, courts may find the issue to be predominantly one of local concern, and, therefore, such a municipal ordinance would be upheld." Legislative Service Commission Final Bill Analysis, Sub.S.B. No. 82, 126th General Assembly, comment 1.

216, 37 O.O. 474, 80 N.E.2d 769 (selection, compensation, and purely local duties of municipal officers do not conflict with any general problem or concern of the state at large); *State ex rel. Canada v. Phillips* (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, paragraph one of the syllabus ("The appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution").

{¶ 48} Qualifications regarding the residency of municipal employees are not aspects of the police power, but rather are matters of local self-government. Because this is not a matter of statewide concern, the ordinances should be upheld as a matter of self-governance and should prevail against R.C. 9.481 as home-rule enactments.

### B. R.C. 9.481 Is Not a General Law

{¶ 49} Even if residency requirements were not a matter of local self-government, R.C. 9.481 is not a general law. To qualify as a general law under the test established in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus, a state statute must "(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." "[S]ections within a chapter will not be considered in isolation when determining whether a general law exists." *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 27.

{¶ 50} Although R.C. 9.481 is part of a statewide and comprehensive legislative enactment, and no part of the state is exempt from the requirements of

the statute, thus satisfying the first and second elements of the general-law test, it fails to satisfy the third and fourth elements.

{¶ 51} By merely eliminating the authority of political subdivisions to require any of their employees to reside in a specific area of the state, R.C. 9.481 fails to set forth police, sanitary, or similar regulations.  R.C. 9.481 can only be said to *limit* the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations.  Thus, it fails to satisfy the third element.  The statute also does not meet the fourth element because it does not prescribe a rule of conduct upon citizens generally.  R.C. 9.481 affects only those citizens who are employees of political subdivisions.

{¶ 52} In essence, R.C. 9.481 creates two distinct classes of state of Ohio employees:  (1) political subdivision employees, who cannot be required to live in a specific area of the state, and (2) all other employees, who may be required to live in a specific area of the state.  This clear division limits political subdivisions' ability to establish residency requirements, but imposes no such limitations upon all other employers.  Because citizens of the state receive differing treatment depending upon whether they are affiliated with political subdivisions, R.C. 9.481 fails to satisfy the fourth element of the general-law test.  The ordinances may conflict with R.C. 9.481, but they do not conflict with a general law of the state.

## IV.  Conclusion

{¶ 53} Because the majority's reading of Section 34 is overly expansive, granting a level of legislative power beyond the language of that section and the intentions of its drafters, I respectfully dissent.  I would hold that (1) Section 34 applies only to work-related matters, (2) residency is not a work-related matter, (3) R.C. 9.481 was not validly enacted under Section 34, and (4) these municipal enactments that impose residency requirements prevail over R.C. 9.481 as a

matter of home rule because they involve a matter of local self-government and because R.C. 9.481 is not a general law.

MOYER, C.J., concurs in the foregoing opinion.

_____

Anthony L. Geiger, Director of Law, for appellee city of Lima in case No. 2008-0128.

Max Rothal, Director of Law, and Deborah M. Forfia and Stephanie H. York, Assistant Directors of Law, for appellees city of Akron and Mayor Donald L. Plusquellic in case No. 2008-0418.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Michael L. Stokes, Assistant Solicitor, and Pearl M. Chin and Sharon A. Jennings, Assistant Attorneys General, for appellant state of Ohio.

Faulkner, Muskovitz & Phillips, L.L.P., Susannah Muskovitz, Robert M. Phillips, and Ryan J. Lemmerbrock, for appellants Fraternal Order of Police, Akron Lodge No. 7, Akron Firefighters Association, IAFF Local 330, Paul Hlynsky, and Phil Gauer in case No. 2008-0418.

Livorno & Arnett Co., L.P.A., and Henry A. Arnett, urging reversal for amicus curiae Ohio Association of Professional Fire Fighters.

Iris Torres Guglucello, Director of Law, and Anthony J. Farris, Deputy Director of Law; and The Chandra Law Firm, L.L.C., Subodh Chandra, and Jaime Bouvier, urging affirmance for amicus curiae city of Youngstown.

Green & Green, Thomas M. Green, Patrick J. Bonfield, Jane M. Lynch, and Jared A. Wagner, urging affirmance in case No. 2008-0128 for amicus curiae city of Dayton.

Paul L. Cox and Gwen Callender, urging reversal in case No. 2008-0128 for amicus curiae Fraternal Order of Police of Ohio, Inc.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, and Stephen J. Smith; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.

Adam Loukx, Acting Director of Law, and John Madigan, General Counsel, urging affirmance for amicus curiae city of Toledo.

Matthew J. Rossman, urging affirmance in case No. 2008-0128 for amicus curiae Urban Development Lab, Case Western University School of Law.

Dolores F. Torriero, urging affirmance in case No. 2008-0128 for amicus curiae Ohio Public Employer Labor Relations Association.

Robert J. Triozzi, Director of Law, Thomas J. Kaiser, Chief Trial Counsel, and Gary S. Singletary, Assistant Director of Law, urging affirmance in case No. 2008-0128 for amicus curiae city of Cleveland.

The Law Offices of Warner Mendenhall, Inc., Warner Mendenhall, and Jacquenette S. Corgan, urging reversal in case No. 2008-0418 for amicus curiae Jon K. Burdeshaw.

_____